HILLIARY BEALL, *et al.*

*v.*

RICHARD DINGMAN *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 5, 1907.*

1. APPEALS AND ERRORS—*chancellor's findings will not be lightly disturbed.* Findings of fact by the chancellor in a case tried without a jury, upon oral evidence, are entitled to great weight, and will not be reversed by a court of review unless clearly and palpably contrary to the weight of the evidence.

2. TRUSTS—*when conduct of trustee in selling land is constructively fraudulent.* The conduct of a trustee who sells the land at public sale at a grossly inadequate price, which he knew was less than he could have realized at private sale, is constructively fraudulent as to the beneficiaries, where he was not required to sell the land at that time, having power to lease it for a one-year term, and where he knew that the rumors of a threatened suit to contest the will had depreciated the market value of the land at that time.

3. SAME—*rules which govern purchasers at judicial sales do not apply to a trustee's sale.* Purchasers of land at a trustee's sale who are familiar with the land, know it is trust property and that they are buying it at a grossly inadequate price, will not be permitted by a court of equity to retain the benefit of their bargain upon the ground that the evidence does not show that they acted fraudulently or unfairly, as may be done in the case of judicial sales, where redemption from the sale is allowed.

4. SAME—*when an order of probate court does not estop cestuis que trustent.* The fact that a trustee reports his sale of land as a trustee to the probate court in his report as executor and that the court approves his report does not estop the *cestuis que trustent* from questioning the acts of the trustee, since the latter does not receive nor hold the money from the sale in his capacity as executor.

5. LACHES—*what is not laches by the beneficiaries in attacking trustee's sale.* The fact that the beneficiaries delay filing a bill to set aside the trustee's sale until their suit, as heirs, to set aside the will has been determined does not constitute *laches.*

6. PLEADING—*when special prayer for accounting not essential.* Upon a bill by *cestuis que trustent* to set aside a trustee's sale, the court has power, upon setting aside the sale, to require that the amount which the purchasers at the sale had realized on the land in excess of their expenditures for improvements be deducted from the amount of the purchase price to be refunded to them, where there is a general prayer for relief, even though there is no specific prayer for an accounting.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. JAMES W. CRAIG, Judge, presiding.

OUTTEN & ROBY, and MILLS BROS., for plaintiffs in error.

JACK & DECK, BUCKINGHAM & GRAY, and LEFORGEE & VAIL, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error to the circuit court of Macon county to review the decree of said circuit court setting aside a sale made March 28, 1901, by W. J. Lawton to plaintiffs in error, Hilliary Beall and John F. Beall, of a tract of land containing 305 acres situate in Macon county, for the price of $7400. The land originally belonged to James Dingman, who died August 14, 1900, leaving a will, in which Lawton was appointed executor and also trustee of the 305 acres of land, with power to sell the same, the proceeds to be held and disposed of as in the will of said James Dingman directed.

The case has been heard twice in the circuit court. On the first trial, at the conclusion of the testimony offered on behalf of complainants in the bill, the court refused to allow them to file an amendment proposed to their said bill, sustained a demurrer to the evidence and dismissed the bill.

The case was then brought to this court by a writ of error, and the decree of the circuit court was reversed and the cause remanded. (*Dingman* v. *Beall*, 213 Ill. 238.) The principal material facts of the case will be found stated in the opinion of the court then filed and will not be here repeated.

The trial court found from the evidence, and decreed, that the lands were reasonably worth, at the time of their sale by the trustee to the Bealls, $12,500; that the sum for which the land was sold to the Bealls ($7400) was a grossly inadequate price; that at the time of the sale there were rumors in the neighborhood that the will of James Dingman was to be contested; that the trusteee, Lawton, knew of these rumors, and that by reason thereof the time was unfavorable to sell said lands; that the Bealls also knew of these rumors, and that Lawton and the Bealls were guilty of constructive fraud.

Much of the argument of plaintiffs in error is devoted to the proposition that the evidence does not sustain the finding of the chancellor as to the value of the lands, their contention being that the proof shows the land sold for all it was reasonably worth. The cause was tried by the chancellor and the evidence heard by him in open court. Defendants in error offered fifteen witnesses who testified as to the value of the lands. Plaintiffs in error offered eight witnesses who testified on the same subject. There was, as is usual in such cases, a wide variance in the estimates of value placed upon the land by the witnesses for the different parties. That there was evidence which tended to support the finding of the chancellor is not denied, and we are unable to say that said finding was so palpably against the weight of the evidence as to justify a reversal of the decree on that ground. The rule in chancery cases tried without a jury upon oral evidence is, as has been often stated by this court, that great weight should be attached to the findings of the chancellor, and his findings will not

be reversed unless clearly and palpably contrary to the weight of the testimony. (*Dowie* v. *Driscoll*, 203 Ill. 480; *Biggerstaff* v. *Biggerstaff*, 180 id. 407; *Baker* v. *Rockabrand*, 118 id. 365.) The same rule must be applied to the contention of plaintiffs in error that the evidence failed to show the threats of the heirs to contest the will of James Dingman, and the rumors in the neighborhood of their intention to do so, had any influence or effect upon the price for which the land sold.

It is also contended by plaintiffs in error that the Bealls owed no duty to the beneficiaries except to do no dishonorable thing to depreciate the price of the land; that Lawton, as trustee under the will, had power and authority to sell the land at such time as he saw fit, and that the Bealls were not required to make any investigation or inquiry as to whether the time and circumstances of the sale were proper and favorable. When this case was before this court at a former term it was held that as to the land in controversy Lawton was trustee, and not executor. The will gave him authority to sell the land on the best terms and for the best price reasonably obtainable but did not fix any time within which the sale was to be made. The trustee was given authority to lease the lands for a term not exceeding one year. There was no emergency which called for or required a sale of the lands at the time they were sold to the Bealls, and the uncontradicted proof shows that Lawton knew of the threatened will contest, and that at least some of the parties who were present at the sale had heard such rumors. The proof also shows that one party, before the land was sold, sent Lawton a proposition or offer of $27 per acre for the land, which was about $800 more for the entire tract than it was sold for, and that another party inquired of Lawton if $10,000 would be an inducement to sell the land. It is true, the proof shows the sale was publicly advertised, and on the day and at the place it was made a large number of persons were present and the Bealls were

not the only bidders at the sale. But the proof shows it was sold for a wholly inadequate price, and tends strongly to show that Lawton knew he could sell it privately for more money. As he was under no compulsion to sell it at that time and could have refused to accept the bid of the Bealls and let them have the land, his conduct in consummating the sale certainly did not fall short of the character given it by the decree of the chancellor, that it was a constructive fraud on the rights and interests of the *cestuis que trust* named in the will. The chancellor found, and the decree recites, that the Bealls, as well as Lawton, knew of the rumors of the will contest, and that on account of such rumors it was an unfavorable time to sell the lands, and that said rumors would have the effect of depreciating the market value of said land. The lands were situate in the vicinity of the village of Niantic, and most of the parties to the suit and the witnesses who testified resided in and near that neighborhood. The proof shows that there was much talk in stores and other business places in the village of Niantic and in the neighborhood, before and at the time the land was sold, to the effect that some of the heirs were dissatisfied with the will and had declared an intention to contest it. A bill was, in fact, filed by one of the heirs to contest and set aside the will and the sale by the trustee within less than a month after said sale occurred. Lawton himself discussed the rumors of the will contest with a number of parties. Hilliary Beall was the father of John F. Beall, and as we understand the evidence, both lived in the village of Niantic. In addition to the fact that the threatened contest of the will appears to have been a subject of rather general discussion in the village, one witness who was present at the sale and bid on the land testified that prior to the sale Hilliary Beall had been in his place of business several times when the threatened will contest was talked about. Considering the relationship of the Bealls, the locality where they lived and their knowledge of the character and value

of the land, we would not be justified in reversing this decree on the ground that the evidence was not sufficient to charge the Bealls with knowledge of the rumors of the proposed will contest. These rumors were well calculated to depreciate the price the land would sell for, and we think the evidence shows that they did so affect it. A large number of persons who were present at the sale did not bid on the land at all, and whether they desired to be purchasers does not appear. One witness, however, who was a bidder at the sale, testifies he desired to buy the land, and after he had bid $7390 some one told him he had better be careful, as there was liable to be a contest of the will. Another witness testifies he desired to purchase the land as an investment and bid on it for that purpose, and while he bid all he thought it was reasonably worth, he knew one of the heirs had said he would contest the will, and that he knew if he bought the land and the will was contested he would have to defend the suit, and that he had this in mind at the time he was bidding for the land. While there is an absence of proof that anyone said or did anything at the sale to prevent or discourage bidders or that there was anything fraudulent or unfair in the manner of conducting the sale, this is not sufficient to overcome the evidence above referred to, and which, to our minds, establishes the fact that the rumors of the will contest did seriously depreciate the price of the land.

The rules governing purchasers at judicial sales we do not think applicable to this case, for the reason that this was not a judicial sale, but was a trustee's sale. While a purchaser of land at a trustee's sale may not be required to see to the application of the money paid to the trustee, where such purchaser is familiar with the lands before the sale and buys them at a grossly inadequate price, as was found by the decree in this case, the law appears to be that this is of itself constructive fraud, independent of whether the purchaser knew of any fraudulent or improper motive which

actuated the trustee in making the sale. In section 770 of Perry on Trusts (vol. 2, 5th ed.) it is said a sale by a trustee at a grossly inadequate price is a breach of trust that affects the title to lands in the hands of the purchaser, and this principle finds support in *Wormley* v. *Wormley,* 8 Wheat. 421. This, also, is the substance of the holding of this court in this case when it was here the first time. While the question of what, if any, effect knowledge or lack of knowledge of the proposed will contest would have had upon the purchaser is not discussed in the opinion, one of the grounds of the reversal is that Lawton knew of these rumors; that he was not obliged to sell the land at that time; that he knew, or might upon reasonable inquiry have known, that the price paid for it was glaringly inadequate. The court there stated that the testimony of most of the witnesses fixed the value of the land at from $10,500 to $14,000, and said (p. 247) : "With such glaring inadequacy in the price, if the sale, for that reason alone, should not be held a fraud upon the *cestuis que trust,* it at least calls for great scrutiny upon the part of the court of the acts of the trustee in making the sale. Before the sale the trustee had been offered $8640 for the land, and the party who made the offer testified that he regarded the land then worth $12,000. The witnesses who testified as to value were residents in the vicinity of the lands. It was the duty of the trustee to inform himself of the value of the property, and if he had gone among these witnesses and made inquiry, it cannot be presumed that he would have failed to receive such information as would have prompted him to withdraw the property from sale when the bids made therefor were so disproportionate to its value. It has been held a breach of trust to sell property at a disadvantageous time when there is no immediate necessity for such sale. (Perry on Trusts, sec. 771, and authorities under note 5.) Here there was no emergency. The time was manifestly disadvantageous and the fact known to the trustee." It will be observed

this holding is independent of whether the purchasers had actual knowledge of the rumors affecting the sale of the land, but is based on the "glaring inadequacy of the price." The Bealls knew they were buying trust property. They bought it, as the evidence showed, at a grossly inadequate price, and this they were bound to know. (*Morris* v. *Robey,* 73 Ill. 462.) Under such circumstances a court of equity will not permit them to retain the benefit of their bargain, as may be done in case of judicial sales and where redemption from a sale is allowed.

It is urged by plaintiffs in error that the proof shows Lawton reported the sale of the land to the probate court in his report as executor; that said report was approved, and that upon the approval of his final report as executor his action in selling the land became binding and conclusive upon defendants in error and its validity cannot now be questioned. Whatever might be the rule if Lawton had received and held the money as executor, the rule contended for by plaintiffs in error can have no application here because he did not receive nor hold the money in his capacity as executor, and the probate court had no jurisdiction to enter any order which would estop or preclude the *cestuis que trust* from questioning the acts of Lawton as trustee.

It is also insisted that defendants in error are estopped by *laches* from seeking the relief prayed in their bill. In this connection it is argued that Richard R. Dingman, a son of James Dingman, deceased, and who did much of the talking about the will contest before it was begun, was present at the sale to the Bealls and made no objection to it; that in the bill originally filed by him as sole complainant, but in which he was subsequently joined by a number of the other heirs as complainants, the sale is not attacked and asked to be set aside as a fraud upon complainants' rights, but merely as an incident to the setting aside of the will. From these circumstances it is contended the delay in filing the bill in this case until January 2, 1903, was such *laches* as to estop

defendants in error from maintaining their bill. We cannot agree with this position of plaintiffs in error. Defendants in error were not guilty of *laches* in delaying filing their bill in this case until the determination of the will contest suit. If that suit had resulted in favor of defendants in error there would have been no necessity for this suit. Besides, the delay, which was less than two years, was not an unreasonable delay, and there is no claim that the Bealls or Lawton were induced by any unreasonable delay of defendants in error to commence this proceeding, to place themselves in any different position from what they would have been in had the bill been filed at an earlier date.

The court also found, from the evidence heard, that the Bealls took possession of the lands after the sale and cut timber therefrom and disposed of it, to an amount aggregating $1530 in excess of the amount expended by them on the premises for improvements and repairs, and this amount was ordered to be deducted from the $7400, and interest, directed to be paid back to the Bealls. This part of the decree is objected to on the ground that the prayer of the bill does not ask for an accounting. The general rule is that a decree should not be broader than the bill. In this case there is a general prayer for relief but no prayer specifically asking for an accounting with the Bealls. In *Ebelmesser* v. *Ebelmesser,* 99 Ill. 541, it was held that in the absence of a specific prayer for an accounting in a case where the essential features were similar to those of the case at bar, a court of chancery not only had the power, but that it was its duty, to take an account and fix the terms upon which the relief is granted.

We are of opinion the decree in this case is sustained by both the law and the evidence, and it is therefore affirmed.

*Decree affirmed.*