The Sohio Corporation, *vs.* Lena D. Gudder *et al.* Appellants.—(J. C. Northcross *et al.* Appellees.)

*Opinion filed February 18, 1941.*

Russell Wilson, for appellants.

WILLIAM A. MILLER, and ALFRED S. PFAFF, for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Marion county by Lena D. Gudder and Ben Gudder, who were made defendants with appellees J. C. Northcross and Lillian Northcross, to an interpleader suit filed by the Sohio Corporation, plaintiff. The court entered a decree finding the appellees J. C. Northcross and Lillian Northcross entitled to specific performance of a contract for the purchase of a certain lot in Centralia, Illinois, and ordered the cancellation of a quitclaim deed given by appellees to appellants. The jurisdiction of this court is based upon the fact that a freehold is involved.

The litigation was commenced by an interpleader suit brought by the Sohio Corporation to ascertain whether certain oil royalties should be paid to appellees or appellants and other parties mentioned as defendants. The Sohio Corporation was the purchaser of oil produced from a well drilled upon block sixty of the original town of Centralia. A pooling agreement had been entered into between owners of various lots in this block for wells drilled in the block. The appellees J. C. Northcross and Lillian Northcross filed an answer to the interpleader suit claiming to be the owners of lot 13 in said block by virtue of a fully performed oral contract of purchase, and also a cross-complaint for cancellation of a quitclaim deed made to appellants. The appellant and cross-defendant Lena D. Gudder claimed to be the owner of said lot 13 at the time of the suit, and at all other times mentioned in appellees' pleadings.

The evidence is quite conflicting but the facts, so far as necessary for a determination of this suit, are substantially as follows: J. C. Northcross was employed in 1922 to

work for Gudder & Company, a corporation owned by Lena D. Gudder and Ben Gudder and their two sons. A house was purchased by the Gudders from one Baldridge in that year and Northcross and his wife and children immediately entered into possession. Mrs. Northcross testified that an arrangement was made to buy the property for $1600 on weekly installments of $5, and that the negotiation was made with Ben Gudder at his place of business, and that her husband was present. Ben Gudder, when called as an adverse witness, could not remember any of the facts, but claims his wife made whatever arrangements there were. Lena D. Gudder, the wife, testified she made the arrangement for the letting of appellees into possession and that it was merely a lease. The evidence shows that the specified amount of $5 was deducted weekly from the wages of Northcross and entered by the bookkeeper of Gudder & Company in a book belonging to Northcross. After something over $1600 had been paid he was informed that the interest must be taken care of, and thereafter he paid $2 per week for approximately seven years, which amounts were also entered in the same book in the same manner. At the time of the commencement of the suit he had been in possession of the property for about three years without any payments being exacted. There is evidence that a contract of purchase was made and has been fully performed.

Oil was discovered in the neighborhood and in March, 1938, appellees made an oil lease, and, later, a mineral deed conveying an interest in the oil and gas under the premises. In May, 1938, appellees, together with other persons, entered into a pooling agreement. In December, 1938, appellees made a quitclaim deed to Lena D. Gudder and in January, 1939, a transfer order to the Sohio Corporation. Appellees claim that the deed and transfer order were wholly without consideration and were executed without the knowledge of their contents, because Northcross was

an uneducated man and partially incapacitated, and further that the property was a homestead and the deed not acknowledged as required by law.

Appellants claim that Lena D. Gudder was at all times the owner of the property, and, if any contract of sale was made to appellees by her husband, there was no proof of agency sufficient to bind her; that, in fact, the whole transaction was one of leasing, except the last three-years' period, during which time Northcross was permitted to occupy the premises without pay, as a matter of kindness. One of the principal claims of appellants is that there was no evidence connecting Lena D. Gudder with the transaction. We think this contention ill-founded. Lena D. Gudder was a part owner of Gudder & Company, and spent a large part of her time at the place of business. She admits she received all of the payments made; she denies that the book in which the receipt of payment was acknowledged was authorized by her, but concedes it was entered by clerks in the office of Gudder & Company. Neither of these clerks was called as a witness, nor their depositions taken. The payments entered in the book at the rate of $5 per week approximate a little more than $1600. The additional sums paid at the rate of $2 per week over a period of seven years more than paid the interest upon this sum at the rate of seven per cent.

The Gudders claim they paid taxes and insurance and like items, which appellees claim were repaid, and, inasmuch as amounts entered in the receipt books are approximately $400 more than principal and interest, this, at least, leaves an inference that further items besides principal and interest were thereby paid by appellees.

The circumstance of the tenant being given a book in which entries of rent payments were made with appellants' knowledge; the occupancy for several years without payment at all, and the procuring of a quitclaim deed by Mrs. Gudder from appellees are strongly indicative of some-

thing besides a mere tenancy. The fact that appellees made an oil lease, a mineral deed and a pooling agreement, while in possession, are explanatory of the nature of the title claimed by them. (*Knight* v. *Knight*, 178 Ill. 553.) It is impossible to believe that Lena D. Gudder, who was a part owner of the corporation, and who worked in the same business with her husband, was not fully cognizant of appellees' claims that they had purchased the property of the husband, either as her agent or believing it belonged to him. There was no occasion to get a quitclaim deed if no title had ever been bargained for. In *Anderson* v. *Armstead*, 69 Ill. 452, this court held that if a married woman holds out to the world that her husband owns her property, or allows him to so act as to induce such belief, or that he has power to bind her, others dealing with him on the faith of this truth will be protected against her. In *Richards* v. *John Spry Lumber Co.* 169 Ill. 238, it is held a wife who holds her husband out as an agent for the making of a contract is estopped to deny liability for his acts done in her behalf. Whether the husband is acting as his wife's agent is a question of fact. (*Bongard* v. *Core*, 82 Ill. 19.) We are of the opinion there was ample evidence upon which the circuit court could not only find a contract had been made, but that Lena D. Gudder's husband was authorized to represent her.

On the other questions of fact in the case with respect to the execution of the quitclaim deed and the transfer order the evidence was conflicting but certainly sufficient, if believed by the court, to authorize the granting of relief. Appellee Northcross was an old, uneducated colored man, who, at the time of the trial, was so slow mentally as to have but slight comprehension of the proceedings.

Appellants have called our attention to *Wright* v. *Raftree*, 181 Ill. 464, as being controlling. In that case not only was the fact of there being a contract disputed, but performance was not shown; no payment was made to

the owner, and the purchaser was never in possession of the property. The law is well settled that an oral contract to convey lands, fully performed, may be enforced in equity. *Kane* v. *Hudson,* 273 Ill. 350; *Fierke* v. *Elgin City Banking Co.* 359 id. 394.

Other minor facts and circumstances were proved by both sides, and it was for the trial court to pass upon the credibility or weight of the testimony of the witnesses. There was evidence in the record which justified the trial court's finding and judgment. We have frequently held that the general rule in equity cases is that great weight should be attached to the findings of the chancellor, and that they will not be reversed unless clearly against the weight of the evidence. *Flynn* v. *Troesch,* 373 Ill. 275; *Dalbey* v. *Hayes,* 267 id. 521; *Beall* v. *Dingman,* 227 id. 294.

We are of the opinion that the evidence amply justifies the decree of the circuit court, and it is, accordingly, affirmed.

*Decree affirmed.*