BIRDIE E. PENDLETON *et al.*, Plaintiffs-Appellees, *v.* FRANK A. KING *et al.*, Defendants-Appellants.

Fifth District   No. 77-93

Opinion filed November 28, 1977.

Donald E. Weihl, of Weihl & Millard, Ltd., of Belleville, for appellants.

William L. Berry, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order of the circuit court of St. Clair County. In that order, specific performance was granted to the would-be purchasers, the plaintiffs, Birdie E. Pendleton and Trois N. Pendleton, for the sale of a lot located in Caseyville, Illinois, against the defendants-appellants, Frank A. King and Carolyn F. King.

In early 1974, Birdie Pendleton entered into negotiations with Frank King for the purchase of a lot in Caseyville, Illinois. The evidence is clear that Mrs. Pendleton viewed the property with Mr. King, discussed terms of sale, offered to purchase the property with her son, Trois Pendleton, and paid $400 to the Frank A. King Agency as a down payment on the land. Title to the property was in Frank A. King and his wife, Carolyn F. King.

When the Frank A. King Agency prepared a contract for deed and bond for deed and presented them to the Pendletons, the Pendletons executed the documents and returned them by mail to the Agency. Frank King signed both documents, but never delivered them to the Pendletons, and later scratched his name off both instruments.

At the time these activities were taking place, Carolyn King, the wife of Frank A. King, was employed in the Frank A. King Agency office. She prepared the bond for deed on this transaction, and received monthly checks for $30 from the Pendletons at the Agency office for March, April, May, June and July, 1974.

In May 1974, the Pendletons took possession of the lot. They constructed a concrete foundation pad, installed a septic tank system, built sidewalks and a driveway, constructed a tool shed, installed electrical wiring, moved a mobile home trailer onto the lot, removed its wheels, and had a permanent foundation affixed around the base of the trailer.

Mrs. Pendleton talked to Mr. King on at least two occasions after the contract for deed and bond for deed were returned to the Agency. The

nature and subject matter of the subsequent conversations with the Kings are in dispute.

This case presents several issues. Was there an oral contract between the Pendletons and the Kings sufficiently definite in its terms to permit specific enforcement? Assuming there was an oral contract, is enforcement barred by the Statute of Frauds? If a contract does exist, and if it is not barred from enforcement, does it bind Frank A. King only, or is it also binding on his wife, Carolyn King? Have the purchasers violated a covenant in their agreement by placing a mobile home trailer on the lot? Finally, evidentiary objections are raised by the defendants.

■■ In *In re Estate of Holder* (1976), 42 Ill. App. 3d 35, 37, 355 N.E.2d 333, the court restated the basic rule regarding specific enforcement of contracts, when it said:

"* * * To justify a decree of specific performance, our supreme court has held the proof of the terms of the agreement to be performed 'must be clear, conclusive and so convincing as to leave no doubt in the mind of the court and it must be made to appear that the terms of the contract are certain, definite, and unequivocal.' (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265, 170 N.E.2d 100, 106; *Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106.) Apart from the above-mentioned unexecuted contract, there is nothing in this record to show a meeting of the minds on the price or terms of the contemplated transaction for which specific performance is sought."

■■ Unlike *Holder*, there is ample consistent evidence of the price, terms and identity of the real estate in question by both plaintiffs and defendants. There is testimony of Frank King, Carolyn King and Birdie Pendleton that there was a purchase price of $2,475, of which $400 was to be a down payment, and the balance to be paid in monthly installments of $30. The Pendletons did execute a contract for deed and bond for deed after those documents, setting out the terms as stated above, were prepared by the sellers' real estate agency. Indeed, Frank King even signed the documents, although they were never delivered to the Pendletons and the signature was later scratched off the documents.

In *Manias v. Yeck* (1957), 11 Ill. 2d 512, 144 N.E.2d 596, the supreme court found an enforceable oral contract on the basis of "testimony regarding the existence of such a contract [that] finds substantial corroboration, including testimony from disinterested parties, * * *, [that] is consistent with and actually confirmed by the subsequent events." Here there is evidence even more persuasive than testimony of disinterested parties—testimony of both interested parties.

Two neighbors were trading narrow strips of land in the *Manias* case, so that one of them could build a bigger garage for his tenants. The buyer

gave the seller $100, which the seller kept, and commenced building his new addition to the garage. The seller watched him build it, and even offered suggestions. At a later date the buyer attempted to reduce the transaction to written form, and hired an attorney for that purpose. There, as here, the written transaction was not completed, despite the buyer's efforts. Subsequent events, in both the *Manias* case and the case before us, corroborate the existence of an oral contract between the Pendletons, and at least Frank King. Contrast this to the facts in *In re Estate of Holder*, cited above.

The court in *Manias* found no difficulty in granting the specific performance once the oral contract had been found to exist. The court said:

> "Finding a contract to exist, we believe the plaintiffs have demonstrated sufficient part performance to remove the bar of the Statute of Frauds. Possession was taken, the $100 consideration paid, and substantial improvements erected. Cf. *Gorham v. Dodge*, 122 Ill. 528, 533, 14 N.E. 44; *McNamara v. Garrity*, 106 Ill. 384, 387."

The Pendletons have demonstrated sufficient part-performance here to remove the bar of the Statute of Frauds. They took possession, made the $400 down payment, made five monthly $30 payments, and made numerous improvements on the property, including the septic system, concrete foundation pad, sidewalks and driveway, and tool shed.

Carolyn F. King, the wife of Frank A. King, argues that even if a contract does exist between the Pendletons and her husband, she was not a party to it, and she should not be compelled to convey her interest. That point was raised by the seller's wife in *Manias v. Yeck* and the court found merit in the argument. In that case the court said:

> "* * * It is true that there is no proof that Mrs. Yeck became a party to this contract, nor did she ever ratify the agreement. The law is clear that a wife cannot be required to join in a conveyance when she is not a party to the agreement to convey. (See, e.g., *Mix v. Baldwin*, 156 Ill. 313, 40 N.E. 959; *Clark v. Jankowski*, 255 Ill. 129, 99 N.E. 338.) Therefore, her undivided one-half interest in the property is not subject to the plaintiffs' actions."

However, in *Sohio Corp. v. Gudder* (1941), 375 Ill. 622, 32 N.E.2d 148, the court rejected the wife's argument that she should not be bound. There she was part owner of the business which entered into the contract to sell the land, she worked actively in the business, she was aware that payments were being received, and she did nothing to stop them. In rejecting the wife's argument, the court said:

> "Appellants claim that Lena D. Gudder was at all times the owner of the property, and if any contract of sale was made to appellees

by her husband, there was no proof of agency sufficient to bind her; that, in fact, the whole transaction was one of leasing, except the last three-years' period, during which time Northcross was permitted to occupy the premises without pay, as a matter of kindness. One of the principal claims of appellants is that there was no evidence connecting Lena D. Gudder with the transaction. We think this contention ill-founded. Lena D. Gudder was a part owner of Gudder & Company, and spent a large part of her time at the place of business. She admits she received all of the payments made; she denies that the book in which the receipt of payment was acknowledged was authorized by her, but concedes it was entered by clerks in the office of Gudder & Company. Neither of these clerks was called as a witness, nor their depositions taken.

\* \* \*

It is impossible to believe that Lena D. Gudder, who was a part owner of the corporation, and who worked in the same business with her husband, was not fully cognizant of appellees' claims that they had purchased the property of the husband, either as her agent or believing it belonged to him. There was no occasion to get a quitclaim deed if no title had ever been bargained for. In *Anderson v. Armstead*, 69 Ill. 452, this court held that if a married woman holds out to the world that her husband owns her property, or allows him to so act as to induce such belief, or that he has power to bind her, others dealing with him on the faith of this truth will be protected against her. In *Richards v. John Spry Lumber Co.*, 169 Ill. 238, 48 N.E. 63, it is held a wife who holds her husband out as an agent for the making of a contract is estopped to deny liability for his acts done in her behalf. Whether the husband is acting as his wife's agent is a question of fact. *Bongard v. Core*, 82 Ill. 19. We are of the opinion there was ample evidence upon which the circuit court could not only find a contract had been made, but that Lena D. Gudder's husband was authorized to represent her."

■■ The facts in our case are close to those of *Sohio Corp. v. Gudder*. As already noted, Mrs. King was working in her husband's real estate agency at the time of the sale. She prepared the bonds for deed form for the Pendletons, and received the monthly checks in the course of her duties. She talked to the Pendletons on occasion about the property, although the nature of the discussions is disputed. Considering the facts of this case, we find that Carolyn F. King's interests are bound.

The Kings contend that the Pendletons have placed a trailer on the lot, in violation of a restrictive covenant in the contract for deed, which states:

"Lots are subject to the following restrictions: No temporary or

basement homes, no trailers, no house costing less than $7,500.00."

According to Birdie Pendleton, Frank King told her before she made the down payment the statement meant, "no trailers, * * *, less than $7,500.00," and that if the trailer were permanently affixed with a walled-in foundation, it would qualify. It would also need to have its wheels taken off and the total project must cost over $7,500.00.

The Kings maintain that the restriction means no trailers of any kind could be put on the lots in the development. Mr. King's testimony was that he told the purchasers that when they first inquired. Mrs. King's testimony was that she refused to sign the written contract for deed because she was afraid the Pendletons were going to put in a trailer.

■■ Testimony from a nearby lot owner in the development established that he had purchased a lot at least a year before Mrs. Pendleton saw the property. His contract had the same restrictive covenants in it, and he had put a trailer on his lot without objection. The trailer was visible when Mrs. Pendleton viewed the property. When the Pendletons moved the trailer onto the lot, they complied with the restrictions which Mrs. Pendleton maintains King communicated to her when she was negotiating the purchase. The Kings maintain that the mobile home was moved on the property in secret because no formal notice was given to them. The Kings did accept the $30 monthly checks even after the trailer was moved on, but did not cash them. After the trailer was discovered by the Kings, they did nothing other than refuse to complete execution of the documents of title.

In *Sohio Corp. v. Gudder,* the court said:

"* * * [I]t was for the trial court to pass upon the credibility or weight of the testimony of the witnesses. There was evidence in the record which justified the trial court's finding and judgment. We have frequently held that the general rule in equity cases is that great weight should be attached to the findings of the chancellor, and that they will not be reversed unless clearly against the weight of the evidence. *Flynn v. Troesch,* 373 Ill. 275, 26 N.E.2d 91; *Dalbey v. Hayes,* 267 Ill. 521, 108 N.E. 657; *Beall v. Dingman,* 227 Ill. 294, 81 N.E. 366."

There is ample evidence to support the trial court's decision on this issue and we, therefore, affirm its finding that the Kings waived enforcement of this restrictive covenant.

Finally, the Kings argue that some testimony regarding prior discussions between Mrs. Pendleton and Mr. King on the permissibility of putting a trailer on the property was admitted in violation of the parol evidence rule. Since we find that the entire contract was oral, the parol

evidence rule does not apply and the objection is not well taken. *Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 153 N.E.2d 37.

The judgment of the trial court is affirmed.

Affirmed.

CARTER, P. J., and G. J. MORAN, J., concur.