RAYMOND A. GILLILAN *et al.*, Plaintiffs-Appellants, v. TRUSTEES FOR CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND *et al.*, Defendants-Appellees.

Second District   No. 2—88—0872

Opinion filed May 15, 1989.—Rehearing denied June 19, 1989.

Nisen & Elliott, of Chicago (Michael H. Moirano, of counsel), for appellants.

John L. Rogers III and Sharon H. Rice, both of Hopkins & Sutter, of Chicago (Albert C. Maule, of counsel), for appellee Equitable Life Assurance Society of the United States.

James L. Coghlan, of Coghlan, Joyce, Kukankos, Urbut & D'Arcy, of Chicago (Anita M. D'Arcy, of counsel), for appellee Trustees for Central States, Southeast and Southwest Areas Pension Fund.

308

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Raymond A. Gillilan, Bessie A. Gillilan, Fox Fields Racing Association, Inc., and North Aurora Raceway, Inc., appeal from an order dismissing their complaint against defendants, trustees for Central States, Southeast and Southwest Areas Pension Fund and the Equitable Life Assurance Society of the United States. The trial court granted defendants' motions to dismiss after concluding that the action was barred as the result of a prior release executed on behalf of Raymond Gillilan by a trustee in bankruptcy and on the basis of estoppel by judgment. Plaintiffs raise two issues on appeal: (1) whether a release executed by a trustee in bankruptcy for one party to an action bars the claims of other parties to the action who were not represented by the trustee and who were not named in the release; and (2) whether a judgment of dismissal entered pursuant to a settlement agreement executed by a trustee in bankruptcy for one party to an action bars the claims of other parties to the action who were not represented by the trustee and who were not named in the dismissal order. We affirm in part and reverse in part.

On August 31, 1978, plaintiffs Raymond and Bessie Gillilan purchased the beneficial interest in a land trust which held title to Aurora Downs, a/k/a Fox Fields, a horse racing track located in North Aurora, Illinois. Aurora Downs was originally owned by Marge Everett, who acquired and developed the property with a $1,800,000 loan from defendant Trustees of the Central States, Southeast and Southwest Areas Pension Fund (Trustees). The Trustees were administrators of a pension fund operated on behalf of the International Brotherhood of Teamsters. The Trustees' loan was secured by a first mortgage on the property. Everett later gifted the property, subject to the Trustees' first mortgage, to Knox College. Knox College then sold the property to investors known as the East-West group, and, in connection with that sale, obtained a second mortgage on the property. The Gillilans purchased Aurora Downs from the East-West group subject to the first mortgage held by the Trustees and the second mortgage held by Knox College. At that time, the mortgages were in default, and the property was in a substantial state of disrepair.

In early 1979, the Gillilans entered into negotiations with defendant Equitable Life Assurance Society of the United States (Equitable) to restructure the Trustees' loan and mortgage. Equitable acted as attorney in fact for the Trustees and was responsible for the management of the pension fund's assets. In June 1979, Equitable, acting on behalf of the Trustees, agreed to defer all delinquent and future principal and interest payments due under the Trustees' loan until Decem-

ber 1, 1981, at which time the loan would be restructured. The agreement was contingent upon the Gillilans selling their interests in a California racing entity and investing those proceeds in the renovation of Aurora Downs. The Gillilans accomplished the contemplated sales and began renovations at Aurora Downs. Equitable subsequently wrote Raymond Gillilan and stated that the deferment program would go into effect contingent upon the continued renovation and maintenance of the property, maintenance of real estate taxes and insurance premiums, and Knox College restructuring its second mortgage.

While the property was being renovated, the Gillilans formed two corporations, plaintiffs, North Aurora Raceway, Inc. (NAR), and Fox Fields Racing Association, Inc. (FFRA). Each of the Gillilans owned a one-half interest in the stock of NAR. The record does not indicate the details of ownership in FFRA. Through NAR, the Gillilans employed approximately 45 persons and conducted various events at the track unrelated to horse racing. In September 1980, renovation of the track was completed, and FFRA was awarded 26 racing dates for the 1981 racing season.

According to plaintiffs, shortly after FFRA was awarded its racing dates, the Gillilans were contacted by representatives of various labor unions who demanded that the Gillilans discharge all of their nonunion employees and hire only union members to work at the track. The Gillilans refused to accede to the unions' demands and were subsequently threatened with economic action. The unions' threats of economic action took the form of demonstrations and interference with the Gillilans' operation of the track. On the first day the track was open for racing and on each racing date thereafter, numerous representatives of the unions blocked access to the track entrance and allegedly threatened plaintiffs' employees, suppliers, and patrons. FFRA obtained a temporary restraining order and preliminary injunction against the unions; however, the activities continued, and the Gillilans suspended racing at the track. In addition to disrupting the operation of the track, the unions also contacted the Trustees and Equitable and allegedly induced them to breach their agreement with the Gillilans and institute foreclosure proceedings.

On April 9, 1981, the Trustees exercised their option to accelerate payment of the principal and interest due on the note. The Trustees subsequently declared a default and filed suit to foreclose on the mortgage against Raymond Gillilan, NAR, and FFRA among others. Raymond Gillilan, NAR, and FFRA filed a counterclaim against the Trustees and a third-party complaint against Equitable and the unions that were involved in the demonstrations at the track. In their coun-

terclaim and third-party complaint, Raymond Gillilan, NAR, and FFRA alleged that the Trustees and Equitable breached their agreement to restructure the loan and, further, that the Trustees, Equitable, and the unions conspired to tortiously interfere with the operation of Aurora Downs by, among other things, engaging in acts of violence and instituting the foreclosure proceeding. These claims remained pending for three years during which time the Gillilans continued in possession of the track.

On February 14, 1984, Raymond Gillilan filed for bankruptcy, and the foreclosure proceedings were automatically stayed. Allan J. DeMars was appointed trustee of the bankruptcy estate of Raymond Gillilan. On September 24, 1984, DeMars and the Trustees entered into an agreed order in the bankruptcy court. Pursuant to that order, the chapter 11 proceeding was converted into a chapter 7 proceeding for involuntary liquidation, the Trustees were granted relief from the automatic stay, and DeMars was authorized to actively market the property. The Trustees subsequently entered into negotiations with DeMars to settle the claims which had been asserted against them in the foreclosure proceeding.

On April 9, 1985, the bankruptcy court entered an order approving a "compromise and settlement of claims asserted by Raymond Gillilan and various entities controlled by him as against the [Trustees] and *** [Equitable]." That order authorized DeMars to proceed with all steps necessary to implement the settlement. On April 26, 1985, Gillilan appealed the order of the bankruptcy court, challenging the fairness of the settlement agreement and further asserting that there was a conflict of interest precluding DeMars from entering into the agreement. In the interim, DeMars began carrying out the terms of the settlement agreement.

On April 12, 1985, pursuant to the settlement agreement, the Trustees and DeMars entered into a "STIPULATION TO COMPROMISE AND DISMISS CLAIMS." In that stipulation, DeMars, acting "as Trustee for Debtor Raymond A. Gillilan and on behalf of *** Raymond A. Gillilan d/b/a Fox Fields (but not on behalf of Fox Fields Racing Association Inc., an Illinois corporation); [and] North Aurora, Raceway, Inc." agreed to (1) file his appearance in the foreclosure proceeding as trustee for the estate of Raymond A. Gillilan; (2) withdraw the answer to the foreclosure complaint and file a new answer admitting the existence of a default; (3) dismiss with prejudice the counterclaim and third-party complaint against the Trustees and Equitable; (4) not oppose a motion for entry of judgment and decree of foreclosure and sale; and (5) execute a release on behalf of Raymond

Gillilan and NAR releasing all claims against the Trustees and Equitable relating to the Aurora Downs property. On April 16, 1985, De-Mars, acting on behalf of "the Bankruptcy Estate of Raymond A. Gillilan," and NAR, an "entit[y] represented by said estate," executed a stipulation to dismiss the counterclaim against the Trustees and third-party complaint against Equitable. Subsequently, DeMars, again acting on behalf of Raymond Gillilan and NAR, executed and delivered a "GENERAL AND SPECIAL RELEASE" to the Trustees and Equitable releasing them from all liability relating to the Aurora Downs property. On May 20, 1985, pursuant to the stipulation signed by De-Mars, the counterclaim and third-party complaint were dismissed with prejudice. On October 15, 1985, Raymond Gillilan's appeal from the earlier order of the bankruptcy court approving the settlement agreement was dismissed with prejudice pursuant to his motion for voluntary dismissal.

On December 31, 1985, plaintiffs, Raymond Gillilan, Bessie Gillilan, NAR, and FFRA, filed the instant action against the Trustees, Equitable, and others. Plaintiffs alleged five separate claims for relief. Counts I and II were directed against all defendants and sought recovery for tortious interference with existing business relations and economic damage. Counts III, IV, and V were brought by Bessie Gillilan only and named the Trustees and Equitable as defendants. These claims, sounding in fraud, unjust enrichment, and breach of contract, sought recovery for defendants' failure to restructure the loan and mortgage.

All of the defendants moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Defendants contended that the release executed by DeMars in favor of the Trustees and Equitable barred all claims. Defendants also claimed that under the principles of res judicata and collateral estoppel, the dismissal of the counterclaim and third-party complaint barred plaintiffs' action.

On August 10, 1988, the trial court granted the section 2—619 motions filed by the Trustees and Equitable only, dismissing the claims against them as to all plaintiffs on the basis of the prior release and estoppel by judgment. As an additional basis for its ruling, the court further found that Bessie Gillilan's claims were barred by the release because she was in privity with Raymond Gillilan. On August 12, 1988, the court entered an order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) finding that there was no just reason to delay enforcement of or appeal from its order of August 10, 1988. On September 9, 1988, plaintiffs filed this timely appeal.

■ A motion to dismiss brought pursuant to section 2—619 of the Code admits all facts well-pleaded, but not conclusions of law or conclusions of fact unsupported by allegations of the specific facts upon which such conclusions rest. (See *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 114.) The defendant has the burden of proving the affirmative defense relied upon in the motion, and the motion should be granted if the record establishes that a genuine or material question of fact does not exist. 70 Ill. App. 3d at 114.

Plaintiffs first contend that the trial court erred in dismissing the complaint on the basis of a prior release since the release executed by the bankruptcy trustee did not bar any claims other than those asserted by Raymond Gillilan. We agree.

■ ■ A release is a contract, whereby one party abandons a claim to another against whom the claim exists, and its interpretation is governed by the principles that govern contract law cases. (*Aqua-Aerobic Systems, Inc. v. Ravitts* (1988), 166 Ill. App. 3d 168, 171; *Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10.) The intention of the parties controls the scope and effect of the release, and such intent is to be discerned from the language used and the circumstances of the transaction. (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 762-63.) Where a written release is clear and explicit, the court must enforce the release as written, and the meaning and intention of the parties should be gathered from the face of that document. *Costa v. Stephens-Adamson, Inc.* (1986), 142 Ill. App. 3d 798, 800.

The release in the instant action provides:

"Allan J. DeMars as Trustee for Debtor, Raymond A. Gillilan and on behalf of the Bankruptcy Estate of Raymond A. Gillilan; and the following entities represented by said estate: Raymond A. Gillilan d/b/a Fox Fields (but not on behalf of Fox Fields Racing Association, Inc., an Illinois corporation); [and] North Aurora Raceway, Inc., an Illinois corporation *** hereby release and forever discharge (on behalf of their agents, employees, successors and assigns) *** the [Trustees] and [Equitable] from any and all claims, causes of action and liabilities (of whatever character) which Releasors now have or ever had against Releasees or any of them relating to the Aurora Downs (Fox Fields) property, the mortgage indebtedness payable to the Pension Fund or the foreclosure proceeding *** including any counterclaims and third-party complaints as against Releasees asserted in the mortgage foreclosure."

■ Plaintiffs concede on appeal that the release is binding on

Raymond Gillilan. Gillilan was the debtor in the bankruptcy proceeding, and DeMars expressly represented his interests in that proceeding. In so representing Gillilan's interests, DeMars, acting "as Trustee for Debtor *** and on behalf of the Bankruptcy Estate of Raymond A. Gillilan," executed a release of all of Gillilan's claims against the Trustees and Equitable relating to the operation of Aurora Downs and arising under the foreclosure proceeding. Accordingly, we conclude that the trial court did not err in granting defendants' motions as to Raymond Gillilan.

▮ It is equally clear from the express terms of the release that the parties did not intend to include FFRA under the provisions of that document. In executing the release, DeMars purported to act on behalf of Gillilan and NAR, "but not on behalf of Fox Fields Racing Association, Inc." Plaintiffs argue that because FFRA was expressly excluded from the release, it is not barred by that document from bringing an action against the Trustees and Equitable. Neither the trial court nor defendants advanced any argument or authority in support of the court's dismissal of the complaint as to FFRA on the basis of the release, and we conclude that the court's judgment in that regard was error.

▮ A much closer question is presented by the court's judgment as it relates to NAR. Plaintiffs concede that the release identifies NAR as a releasing party. Plaintiffs nonetheless argue that DeMars did not have authority to execute a release on behalf of NAR. We agree.

Nothing in the record before us indicates that DeMars had authority to act on behalf of NAR as a corporate entity. In executing the release and other settlement documents on behalf of NAR, DeMars' authority was expressly limited to acting on behalf of NAR as an "entit[y] represented by [the bankruptcy estate of Raymond Gillilan]." This is further reflected in DeMars' affidavit in opposition to defendants' motion to dismiss wherein DeMars stated that "[i]n executing the settlement documents on behalf of [NAR], [he] did so only to the extent of *Mr. Gillilan's ownership of stock in that corporation*." (Emphasis added.)

Defendants do not provide this court with any authority in support of their apparent position that the actions taken by a trustee in bankruptcy on behalf of the debtor's interest in a corporate entity are binding on the corporate entity. Rather, defendants counter plaintiffs' position that DeMars lacked authority to act on behalf of NAR by noting that NAR did not challenge DeMars' authority to act on its behalf when Gillilan appealed the bankruptcy court's order approving the

settlement agreement. This argument is unavailing. NAR was not the debtor and was not otherwise a party to the bankruptcy proceeding. Only Raymond Gillilan's interest in NAR was subject to the bankruptcy court proceedings. Accordingly, we conclude that DeMars was not acting on behalf of NAR as an entity separate and apart from Raymond Gillilan's interest in that corporation, and the trial court therefore erred in granting defendants' motion to dismiss as to NAR based on the release.

Finally, as to Bessie Gillilan, the trial court found that the release barred her from maintaining an action against the Trustees and Equitable because she was in privity with Raymond Gillilan. We disagree.

As a general rule, a person who is not a party to a release will not be bound by the terms of the release. (See *Unger v. Nunda Township Rural Fire Protection District* (1985), 135 Ill. App. 3d 758, 764.) However, the concept of privity provides that a nonparty may be bound where that person's interests are so closely aligned to the party's interests that the party is her virtual representative. See *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 634.

In support of their argument that Bessie Gillilan was in privity with Raymond Gillilan and therefore bound by the release, defendants cite *Sohio Corp. v. Gudder* (1941), 375 Ill. 622, and *Pendleton v. King* (1977), 55 Ill. App. 3d 1. In both of those cases, a wife tried to disavow a real estate contract negotiated by her husband. (*Sohio Corp.*, 375 Ill. at 625; *Pendleton*, 55 Ill. App. 3d at 4.) In each case the court concluded that the wife could not disavow the contract negotiated on her behalf because she allowed her husband to hold himself out as representing her interests. (*Sohio Corp.*, 375 Ill. at 626; *Pendleton*, 55 Ill. App. 3d at 5.) Specifically, in *Sohio Corp.*, the court found it particularly significant that the wife did not challenge the transaction despite the fact that she was part owner of the business through which the contract was made, spent considerable time working for the business, and received all payments made under the real estate contract as part of her activities at work. (*Sohio Corp.*, 375 Ill. at 625-26.) Similarly, the *Pendleton* court found that the wife in that case could not successfully challenge the contract in that she worked for her husband's real estate agency at the time of the sale, prepared the bonds for deed form for the purchasers, received the monthly payments for the property in the course of her duties, and talked to the purchasers about the property on several occasions. *Pendleton*, 55 Ill. App. 3d at 5.

In the instant action, unlike *Sohio Corp.* and *Pendleton*, there is no evidence in the record indicating that Bessie Gillilan held her

husband out in any manner as representing her interests. Bessie Gillilan was not a debtor in the bankruptcy proceeding and was a separate shareholder in NAR and presumably in FFRA. The release was executed as the result of negotiations between defendants and DeMars acting as trustee for the bankruptcy estate of Raymond Gillilan only. DeMars' affidavit further indicates that defendants attempted to separately negotiate a settlement of Bessie Gillilan's claims. Defendants have not filed any opposing affidavits, and this fact is otherwise uncontroverted. From this evidence it is apparent that defendants did not contemplate that the release constituted a settlement of Bessie Gillilan's claims. Accordingly, we conclude that the trial court erred in dismissing the complaint as to Bessie Gillilan on the basis of privity to the release.

Plaintiffs next contend that the trial court erred in dismissing the complaint on the basis of estoppel by judgment. Plaintiffs contend that the judgment of dismissal executed pursuant to the settlement agreement between defendants and DeMars acting as trustee for the bankruptcy estate of Raymond Gillilan bars only the claims of Raymond Gillilan. We agree.

■ The doctrine of *res judicata* or estoppel by judgment provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies and constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*Barth v. Reagan* (1986), 146 Ill. App. 3d 1058, 1063; *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 623.) A dismissal with prejudice entered pursuant to a settlement agreement constitutes a final judgment on the merits sufficient for application of *res judicata. Keim,* 57 Ill. App. 3d at 624; see *Barth,* 146 Ill. App. 3d at 1064.

■ In the instant action, although the dismissal of the counterclaim and third-party complaint in the foreclosure action constitutes a judgment on the merits sufficient for application of *res judicata,* it bars only the claims of Raymond Gillilan. The stipulation to dismiss the counterclaim and third-party complaint against defendants was entered into by DeMars on behalf of the bankruptcy estate of Raymond Gillilan and certain entities represented by that estate. The judgment of dismissal with prejudice was narrowly limited in that it was "heard on the stipulation by and among Counter-claimants and Third-Party Complainants *** Raymond A. Gillilan; Raymond A. Gillilan d/b/a Fox Fields (but not on behalf of Fox Fields Racing Association, Inc., an Illinois corporation); [and] North Aurora Raceway, Inc." FFRA was expressly excluded, and, as noted above, DeMars' affidavit

establishes that the reference to NAR went only to Raymond Gillilan's ownership of stock in that entity. Accordingly, we conclude that the claims advanced by NAR and FFRA in the counterclaim and third-party complaint were not disposed of by the court's judgment. In addition, Bessie Gillilan was neither a party to the foreclosure action nor in privity with Raymond Gillilan such that her claims could be affected by the judgment. Because we conclude that only Raymond Gillilan's claims were settled by DeMars and dismissed by the court in the foreclosure proceeding, we hold that the trial court in the instant action erred in dismissing the complaint on the basis of estoppel by judgment as to NAR, FFRA, and Bessie Gillilan.

For the reasons set forth above, the judgment of the circuit court granting defendants' motions to dismiss is affirmed as to Raymond Gillilan only. The judgment of the circuit court granting defendants' motions to dismiss is reversed as to the remaining plaintiffs, and this cause is remanded to the circuit court for further proceedings.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, P.J., and WOODWARD, J., concur.