THE FIRST NATIONAL BANK OF GENEVA, Plaintiff-Appellant, v. NOR-
MAN E. LIVELY *et al.*, Defendants-Appellees (The First National Bank of
Geneva, as Trustee, Defendants).

Second District   No. 2—90—0497

Opinion filed April 1, 1991.

Paul A. Lewis and Lisa M. Nyuli, both of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora, for appellant.

Stephen M. Cooper, of Cooper, Storm & Petesch, of Geneva, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, The First National Bank of Geneva (Bank), appeals from an order entered in the circuit court of Du Page County granting the motion of defendants, Norman E. Lively and Shirley J. Lively (Livelys), to dismiss plaintiff's action pursuant to section 2—619(a)(6) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(6)). The issue raised on appeal is whether the trial court erred in granting defendants' motion to dismiss based on a previous release executed between the Livelys and the Bank. We reverse the judgment and remand the cause for further proceedings.

On May 29, 1982, a promissory note and a mortgage on property located in St. Charles, Illinois, were executed by the Livelys to the Bank. This property was later conveyed to a land trust of which the Bank became trustee and Mrs. Lively the sole beneficiary. The Livelys also had other dealings with the Bank as a result of the Livelys' connection to Sunstream Aircraft, Inc., and Sunstream Jet Express, Inc. The Livelys and the two corporations subsequently were involved in litigation with the Bank which resulted in a settlement ending the litigation. The settlement consisted of three documents, contemporaneously entered into by the Livelys, the corporations, and the Bank. These documents, dated January 23, 1989, are: the "Final Settlement Agreement" signed by Mr. and Mrs. Lively individually, Mr. Lively as president of Sunstream Aircraft, Inc., and the First National Bank of Geneva, Inc., by its president John Van Thournout; the "Mutual Release" signed by the Livelys, Mr. Lively as president of Sunstream Aircraft, Inc., and the Bank; and the "Release" signed by First National Bank of Geneva, Inc., by John Van Thournout, its

president. At the time these documents were signed, the bank was continuing as trustee of the property now in default.

In December 1989 the Bank instituted this suit to foreclose on the property it held in trust. The defendants filed a motion to dismiss under section 2—619(a)(6) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(6)). The defendants asserted that under the "Mutual Release" the note held by the Bank and signed by the Livelys had been discharged. The "Mutual Release" contained very broad language of general release. The relevant parts include: .

"THIS MUTUAL RELEASE is executed on the 23rd day of January, 1989, by and between NORMAN E. LIVELY, SHIRLEY LIVELY, and SUNSTREAM AIRCRAFT, INC. (hereinafter collectively referred to as 'Lively'), and the FIRST NATIONAL BANK OF GENEVA, an Illinois banking corporation, its officers and directors (hereinafter collectively referred to as the 'BANK');

WHEREAS, LIVELY is indebted to the BANK by virtue of various notes, some, but not all of which have been reduced to judgment;

WHEREAS, LIVELY, has made certain claims against the BANK, which claims have been denied by the BANK;

WHEREAS, LIVELY and the BANK have settled and compromised all matters between them, and each agrees to release and discharge the other from any and all obligations arising from any and all past and present relationships now or previously existing between the parties.

NOW, THEREFORE, in consideration of payments made contemporaneously made [sic] with the execution hereof and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, LIVELY and the BANK hereby mutually release and discharge each other, their heirs, and legal representatives from all claims, demands, and causes of action, known or unknown, that either may now have or may claim to have arising out of or connected with, whether directly or indirectly, any relationship now or previously existing between them."

The circuit court agreed with the Livelys that under the "Mutual Release" the note had been discharged, and the action for foreclosure was dismissed.

The plaintiffs now appeal and argue that the "Mutual Release" was not intended to have such a broad effect as the defendants assert since the "Mutual Release" does not mention specifically the

note and mortgage in question or the trust relationship. The plaintiff also argues that the three documents executed on January 23, 1989, must be read together to discern the actual claims being released.

■ The recent case of *Gillilan v. Trustees for Central States, Southeast & Southwest Areas Pension Fund* (1989), 183 Ill. App. 3d 306, clearly states how releases are to be treated in Illinois.

> "A release is a contract, whereby one party abandons a claim to another against whom the claim exists, and its interpretation is governed by the principles that govern contract law cases. (*Aqua-Aerobic Systems, Inc. v. Ravitts* (1988), 166 Ill. App. 3d 168, 171; *Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10.) The intention of the parties controls the scope and effect of the release, and such intent is to be discerned from the language used and the circumstances of the transaction. (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 762-63.) Where a written release is clear and explicit, the court must enforce the release as written, and the meaning and intention of the parties should be gathered from the face of that document." *Gillilan*, 183 Ill. App. 3d at 312.

In the present case, there are several problems with the release presented by the defendants. The "Mutual Release" itself speaks only very generally. While it does mention notes, it does not mention any specific notes, and again while it mentions claims the Livelys might have against the Bank, it does not mention specific claims. The "Mutual Release" then goes on to release both the Livelys and the Bank in very general terms.

> "NOW, THEREFORE, in consideration of payments made contemporaneously made [*sic*] with the execution hereof and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, LIVELY and the BANK hereby mutually release and discharge each other, their heirs, and legal representatives from all claims, demands, and causes of action, known or unknown, that either may now have or may claim to have arising out of or connected with, whether directly or indirectly, any relationship now or previously existing between them."

If this language were strictly construed, any claim arising out of any relationship existing at the time of the signing of the lease would be barred. This could potentially affect any claim arising out of the trust relationship that also existed at the time the release was signed. Under these circumstances, "Illinois courts will restrict the language of a general release to the thing or things intended to be

released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696.

■ It is impermissible, therefore, for a court to conclude that every claim that might have arisen under any relationship between the Livelys and the Bank is covered by the "Mutual Release." The release alone is not clear and explicit but, rather, very general and vague. However, "in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract." *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80; see also *Magnuson v. Schaider* (1989), 183 Ill. App. 3d 344, 357; *McDonald's.Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 909.

■ Here, the two other documents executed with the "Mutual Release" provide answers concerning what relationships and claims the parties intended to be released. Of course, reading the "Final Settlement Agreement" and "Release" together with the "Mutual Release" is not a violation of the parol evidence or extrinsic evidence rule, as defendants claim, because these three documents constitute one contract. The defendants argue "[b]oth the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 323.) However, because the three agreements were contemporaneously entered into, they are considered one contract and the information needed to determine what "claims, demands, and causes of action" were intended can be derived from the face of the three documents. Therefore, there is also no violation of the rule "[w]here a written release is clear and explicit, the court must enforce the release as written, and the meaning and intention of the parties should be gathered from the face of that document." *Gillilan v. Trustees for Central States, Southeast & Southwest Areas Pension Fund* (1989), 183 Ill. App. 3d 306, 312, citing *Costa v. Stephens-Adamson, Inc.*, 142 Ill. App. 3d 798, 800; *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 323.

■ We turn now to a discussion of the parties' intentions as we discern them from the three writings that form the contract in this cause. Clearly, the intention stated on the face of the document was to create an agreement which would end the litigation, then in progress concerning the Bank, the Livelys, and the Livelys' corpora-

tions, Sunstream Aircraft, Inc., and Sunstream Jet Express, Inc. The "Final Settlement Agreement" specifically refers to case No. L–KA–840721 and the ongoing post-judgment matters still to be resolved by this agreement. The "Final Settlement Agreement" states in relevant part:

> "WHEREAS the Bank has obtained a valid Judgment against LIVELY and SUNSTREAM in Case No. L KA 84 0721 in the Circuit Court of Kane County, and;
>
> WHEREAS there are presently pending before the court various post judgment matters including a Citition [*sic*] to Discovey [*sic*] Assets, a Garnishment served on Continental Illinois National Bank and Trust Company of Chicago, and various objections and other pleadings to those post-judgment proceedings filed by the Defendants as well as Stephen M. Cooper, Attorney-at-Law, individually."

The "Final Settlement Agreement" refers to the two releases that will be executed as part of the settlement. Even though there is general language in the "Final Settlement Agreement," again this general language will not be so broadly construed as to allow a claim "not then in the minds of the parties." (*Gladinus*, 51 Ill. App. 3d at 696.) In other words, the Bank arguably did not intend the note in question to be discharged anymore than the Livelys intended to preclude themselves from bringing a claim against the Bank as trustee for breach of its fiduciary duty.

Finally, there is another clue as to what claims were intended to be released by these three documents. In considering who signed the agreements and in what capacity, again it is clear that the documents were meant to end the still continuing litigation between the Bank and the Livelys concerning the Livelys' corporations, Sunstream Aircraft, Inc., and Sunstream Jet Express, Inc. Both the "Final Settlement Agreement" and the "Mutual Release" were signed by the Livelys individually and Mr. Lively for Sunstream Aircraft, Inc. The "Mutual Release" itself does not even distinguish between the Livelys and Sunstream Aircraft, Inc. The entire release is written to refer to them collectively as the "Livelys." The effect of this release was mutually to release the Bank on one side and the Livelys, collectively, on the other from potential claims and actions that could have occurred out of the litigation then in progress concerning Sunstream Aircraft, Inc. The release arguably was not intended to bar forever any action based on any possible relationship the Livelys and the Bank might have had at the time the release was signed.

We therefore reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings to determine the intent of the parties relative to the nature and extent of the release as well as other matters still pending before the circuit court.

Reversed and remanded.

McLAREN and GEIGER, JJ., concur.