JAMES M. MURPHY, Plaintiff-Appellant, *v.* S-M DELAWARE, INC., a/k/a Salerno-Megowen Biscuit Company, Defendant-Appellee.

First District (2nd Division)    No. 80-96

Opinion filed April 7, 1981.

Gerard C. Heldrich, Jr., of Peterson, Heldrich, Collison & Associates, of Chicago (Michael Kreloff, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Robert E. Kehoe, Jr., of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, James M. Murphy, a sales supervisor and shareholder of defendant, S-M Delaware, Inc., known as Salerno-Megowen Biscuit Company (hereinafter referred to as Salerno), sold his shares of stock pursuant to a merger resolution, and, in conjunction therewith, executed a document entitled "SELLING STOCKHOLDERS' CONSENT AND AGREEMENT" (hereinafter referred to as the Agreement). Subsequently plaintiff brought an action seeking, *inter alia*, a declaration that the release provision set forth in the Agreement did not bar his claim for earned sales commissions. Defendant's motion for judgment on the pleadings was granted and judgment entered thereupon in favor of defendant. Plaintiff appeals, contending that the trial court erred in entering judgment on the pleadings because the scope of the release and the existence of mistake by the parties to the release are factual questions to be examined after hearing all extrinsic evidence.

The following factual allegations emerge from plaintiff's complaint and amended complaint:[1]

Plaintiff worked for Salerno for the entirety of his adult life until July 1, 1978, and is the nephew of Alyce Salerno, who was chairman of the board of directors prior to June 30, 1978. On June 30, 1978, Salerno merged with Associated Biscuits Chicago, Inc. As part of this merger transaction all Salerno stockholders sold their shares of stock to Associated Biscuits Chicago, Inc., in return for cash. Many of the 32,370 shares of stock were held in several family trusts, and plaintiff held 100 shares in his own name. Although plaintiff's pleadings do not disclose what interest, if any, plaintiff had in the family trusts, his pleadings do disclose that he was one of the four shareholders selected to represent the shareholders with respect to the merger transaction.

Plaintiff further alleged that in preparation for and as part of the merger transaction, a Salerno director and attorney for the Salerno family trusts (hereinafter referred to as the director-attorney) prepared or caused to be prepared the Agreement. Under the Agreement each of the 20 shareholders adopted a resolution approving the merger. Set forth in the Agreement was the following release provision:

"The Selling Stockholders hereby release Salerno-Megowen Biscuit Company, an Illinois corporation ('Salerno') and S-M Delaware, Inc. (together 'the Companies') and their successors and assigns from all actions, causes of action, debts, obligations,

---

[1] Within the time permitted for pleading defendant filed its motion for judgment on the pleadings but filed no answer to plaintiff's amended complaint.

liabilities, claims and demands whatsoever, in law or in equity, which the Selling Stockholders, their heirs, executors, administrators, successors and assigns, ever had, now have or hereafter can, shall or may have against the Companies, or either of them, on account of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release; provided, however, that the Companies shall not be released from any obligation or liability to any Selling Stockholder on account of any claims for compensation for services or reimbursement of expenses arising in the ordinary course of business and accruing within 30 days before the date hereof or on account of any claims arising under any obligation or liability of the Companies to indemnify any Selling Stockholder pursuant to the by-laws of the Companies or under Section 42—12 of the Illinois Business Corporation Act."

On August 10, 1978, subsequent to the merger, plaintiff made a written demand for net sales commissions totalling approximately $800,000 which he alleged were due to him for the years 1972 through 1979. Plaintiff further alleged that each year he had made requests for his commissions but his requests were "deferred." Plaintiff based his claim for these commissions upon a formula contained in a company memorandum dated February 12, 1971, establishing plaintiff's "pay status" for the year 1971. Plaintiff alleged that this memorandum had never been "altered, amended or revoked" and therefore was applicable to the years subsequent to 1971.

Prior to his execution of the Agreement, plaintiff consulted the director-attorney concerning what effect, if any, the release provision would have upon plaintiff's sales commissions. The director-attorney allegedly advised plaintiff that the release provision would only have an effect upon plaintiff's shares of stock. Plaintiff further alleged that certain directors of Salerno deliberately did not advise the other directors or the accountants and auditors of the sales commissions due him so as to deny him the commissions due and to increase the value of the Salerno stock.

Plaintiff contends that "both the scope of the release and the existence of mistake by the parties to the release are factual questions to be examined after hearing all extrinsic evidence." He argues that because his "pleadings denied that the stockholders' release also released his claim for commissions due him in his capacity as a salesman and because [he] alleged that the parties thought the release was just so limited in its scope, judgment on the pleadings was improper."

■■ It is a recognized principle of law that a motion for judgment on the pleadings presents the court with a question of law as to whether there is an issue of fact to be tried. (*Augustine v. Chateau Homes, Inc.* (1975), 26 Ill. App. 3d 203, 204, 324 N.E.2d 633.) The motion requires that we

examine the pleadings in order to determine if there is an issue of fact or if the controversy can be resolved solely as a matter of law. (*Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 149, 308 N.E.2d 118.) We first consider plantiff's contention that the "scope of the release" presents a factual question.

A release is a contract wherein a party abandons a claim to the person against whom the claim exists. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512, 387 N.E.2d 862.) Since a release is a contract, the interpretation and construction of it is governed by the rules of contract law. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512; *Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 150.) It is the generally accepted rule that the rights of parties to a contract are limited by the terms expressed in the instrument. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512; *Kohenn v. Plantation Baking Co.*(1975), 32 Ill. App. 3d 231, 234, 336 N.E.2d 491.) In the construction of contracts where no ambiguity is presented, the meaning of the agreement and the intention of the parties must be ascertained from the words employed therein. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512-13; *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 689, 355 N.E.2d 43.) The determination of whether an agreement is ambiguous is a matter of law. *Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 513; *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 573, 366 N.E.2d 561, *appeal denied* (1977), 66 Ill. 2d 642.

■■ Our analysis of the release provision convinces us that it is clear and unambiguous, and therefore no rules of construction need be applied. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 513; *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 573.) In *Public Relations Board, Inc. v. United Van Lines, Inc.* (1978), 57 Ill. App. 3d 832, 833-34, 373 N.E.2d 727, this court, quoting *Whiting Stoker Co. v. Chicago Stoker Corp.* (7th Cir. 1948), 171 F.2d 248, 250-51, *cert. denied* (1949), 337 U.S. 915, 93 L. Ed. 1725, 69 S. Ct. 1155, stated:

> " 'A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions; it is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. 17 C.J.S., Contracts, §294, and case there cited. Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction.' "

The release provision is comprehensive: it extends to "all actions, causes of action, debts, obligations, liabilities, claims, and demands whatsoever, in law or in equity, which the Selling Stockholders, their heirs, executors,

administrators, successors and assigns, ever had, now have or hereafter can, shall or may have against the Companies, or either of them, on account of any matter, cause or thing whatsoever, from the beginning of the world to the date of this release * * *." The interpretation plaintiff urges upon us would have us exempt from this comprehensive language his claim, demand or cause of action for sales commissions because he earned these commissions as a salesman and not as a stockholder. Considering all of the language and provisions of the release, we believe defendant's interpretation is the proper one. There is no language limiting the provisions of the release to those claims, demands, or cause of action which arise solely from ownership of stock. In fact the proviso itself substantiates the trial court's conclusion that the scope of the release extends to plaintiff's claim for sales commissions. The proviso states:

> "* * * provided, however, that the Companies shall not be released from any obligation or liability for compensation for services or reimbursement for expenses arising in the ordinary course of business and accruing within 30 days before the date hereof * * *."

If the release did not contemplate the inclusion of compensation claims of employee shareholders, there would have been no need to exclude those compensation claims arising in the ordinary course of business and accruing within 30 days before the day of the Agreement. It is our opinion, therefore, that the release is not ambiguous.

Plaintiff also argues that his claim for sales commissions falls within the proviso because his claim did not accrue until his demand was refused. We find this argument to be without merit. To the contrary, plaintiff was able to bring suit on such claims as they accumulated. *Schmidt v. Pfau* (1885), 114 Ill. 494, 2 N.E. 522.

■■ Plaintiff, relying upon *Pennwalt Corp. v. Metropolitan Sanitary District* (N.D. Ill. 1973), 368 F. Supp. 972, further argues that a release, no matter how broad its terms, does not include claims not within the contemplation of the parties. We agree with the proposition that a general release is inapplicable to unknown claims (*Todd v. Mitchell* (1897), 168 Ill. 199, 48 N.E. 35), and that a court of equity will not allow the releasee to take advantage of the general words of a release to defeat the collection of a demand not then in the minds of the parties (*Keeran v. Wahl Co.* (1943), 320 Ill. App. 457, 51 N.E.2d 598). It is our opinion that this proposition is inapposite to the case at bar. At the time the release was executed plaintiff's demand for sales commissions was certainly not unknown to plaintiff. In fact he had sought advice concerning what effect, if any, the release would have upon his claim for the sales commissions. And as we have noted above, the comprehensive nature of

the release is indicative of defendant's intent to release itself from claims such as plaintiff's.

■■■ Plaintiff further argues, relying upon *Upper Avenue National Bank v. First Arlington National Bank* (1980), 81 Ill. App. 3d 208, 212, 400 N.E.2d 1105, that "a release given without consideration is void and part payment of an amount undisputedly due does not constitute consideration." We find this argument to be without merit. This rule "applies only to liquidated claims, and has no application where there is an honest compromise of unliquidated or disputed demands." (*Upper Avenue National Bank*, 81 Ill. App. 3d 208, 212.) The consideration cited is ordinarily presumed to be adequate and the courts generally will not inquire into the sufficiency of the consideration where an actual dispute as to the claim exists. *Upper Avenue National Bank*, 81 Ill. App. 3d 208, 212.

■■ Plaintiff also attempts to avoid the release based upon the theory of mutual mistake. The cases hold that a release or covenant may be set aside under certain circumstances if the agreement was entered into through a mutual mistake of fact. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111, 387 N.E.2d 878.) The mistake must be mutual, material to the transaction, and affect its substance. Accordingly, a unilateral or self-induced mistake is insufficient to set the document aside. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 111-12.) A mistake will not be considered self-induced if the plaintiff acted reasonably under all the circumstances of the case. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 112.

Plaintiff's assertion that defendants intended to preserve plaintiff's right to bring suit for his claimed sales commissions is unsupported by plaintiff's pleading. Plaintiff alleged that during the years 1971 to 1978 his demands for sales commissions had been "deferred." Subsequent to the merger defendant denied that plaintiff was "entitled" to any commissions. Plaintiff further alleged that preserving his claim would have "substantially reduced" the price that was paid for the stock pursuant to the merger transaction. Moreover, the mistake which plaintiff asserts, the legal advice given him by the director-attorney, is not a mistake of fact but rather a mistake of law. We conclude, therefore, that plaintiff has failed to plead facts sufficient to invoke the doctrine of mutual mistake.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.