ROBERT M. UNGER, Plaintiff-appellant, v. NUNDA TOWNSHIP RURAL FIRE PROTECTION DISTRICT *et al.*, Defendants (Terra Cotta Realty Company, Defendant-Appellee).

Second District   No. 84—0618

Opinion filed August 12, 1985.

Maureen P. McIntyre, of Henehan & McIntyre, of Cary, for appellant.

Markham M. Jeep and Charles M. May, both of Charles M. May, Ltd., of Waukegan, and Brian E. Martin, of Boodell, Sears, Giambalvo & Crowley, of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Robert M. Unger, filed suit against various parties seeking to recover damages for the destruction by fire of certain trees on property which he was in the process of purchasing under an installment sales contract. He is appealing an order granting defendant Terra Cotta Realty Company (Terra Cotta) summary judgment under section 2—1005 of the Code of Civil Procedure. Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.

The pleadings and affidavits filed in this case disclose that on November 15, 1978, plaintiff and his wife, as purchasers, and Oscar Borst, as vendor, entered into an installment contract for the sale of certain real estate in McHenry County. The contract required plaintiff and his wife to pay Borst $5,000 upon execution of the contract, $30,000 upon closing of the contract, and $40,000 on October 15, 1979, and on that same date in each of the next four years. Borst was required to convey title to a trust at the McHenry State Bank, which trust would require assignment of the beneficial interest to plaintiff upon full payment of the purchase price. The contract made provision for possible "interim conveyances" of portions of the real estate to plaintiff prior to full payment.

The contract included two different provisions regarding transfer of possession of the property. One stated that "[p]ossession of all buildings on the premises shall be given to purchaser as of October 1, 1978." The other provided that "[p]ossession of the premises shall be delivered to Purchaser on closing which shall be within fifteen (15) days from delivery of Owners Title Insurance Policy in accordance with this Agreement." The contract required the title insurance policy to be delivered by December 15, 1978. The agreement also provided that plaintiff "shall have the right to remove trees."

The contract did not expressly allocate risk in case of destruction of buildings or trees on the property by fire or other disaster. It included the following paragraph regarding fire insurance:

"Purchaser shall keep all buildings at any time on the prem-

ises insured in Seller's name at Purchaser's expense against loss by fire, lightning, windstorm and extended coverage risks in companies to be approved by Seller in an amount at least equal to the sum remaining unpaid hereunder, which insurance, together with all additional or substituted insurance, shall require all payments for loss to be applied on the purchase price, and Purchaser shall deliver the policies therefor to Seller."

The agreement also provided:

"No right, title or interest, legal or equitable, in the premises, or any part thereof, shall vest in Purchaser until the delivery of the deed aforesaid by Seller, or until the full payment of the purchase price at the times and in the manner herein provided."

On February 1, 1979, plaintiff entered into a contract with a nursery and landscaping company to sell the trees on the property. Pursuant to that agreement, certain trees were removed and sold.

Terra Cotta owned land adjacent to that being purchased by plaintiff. In addition, Oscar Borst owned and resided on property that he was not selling to plaintiff which was adjacent to the property plaintiff was purchasing. On April 18, 1980, Terra cotta started a brush fire on its property, intending to conduct a "controlled burn." The fire burned out of control and destroyed trees on the property plaintiff was purchasing as well as on Borst's residential property.

On November 20, 1980, Oscar Borst and his wife signed a release in favor of Terra Cotta. That document recited that in consideration of $4,000 the Borsts, "their heirs, executors and administrators" released Terra Cotta from all causes of action, and particularly for fire damage to trees "on the property of Oscar Borst" and his wife. The property was not otherwise described. This release was negotiated and executed after the president of Terra Cotta, George Berry, along with Borst, walked through the property Borst was selling to plaintiff to survey the damage. At that time plaintiff had not yet acquired title to the property under the installment contract.

Plaintiff subsequently filed suit against Terra Cotta, the Nunda Township Rural Fire Protection District, Nunda Township, and the village of Prairie Grove, seeking damages for the trees that had been burned. Recovery was sought under theories of negligence and wilful and wanton misconduct. The complaint against the village of Prairie Grove was dismissed without prejudice on plaintiff's motion. The trial court entered summary judgment in favor of the other three defendants. As noted above, plaintiff is appealing only the summary judgment entered in favor of Terra Cotta.

The basis for the trial court's decision regarding Terra Cotta was

its conclusion that Borst was the party who had suffered the loss. The release Borst signed was, therefore, sufficient, the trial court concluded, to protect Terra Cotta. The trial court also concluded that plaintiff had improperly pleaded his damages but stated that said pleading defect, which could be corrected, was not the basis of its decision.

In support of the trial court's decision, Terra Cotta maintains that under the installment sales contract between Borst and plaintiff the risk of loss by fire was on Borst, the vendor. Because it was his loss, Terra Cotta maintains, Borst, and not plaintiff, had standing to sue. In support of its contention that the risk of loss was on the vendor, Terra Cotta cites *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42. In response to Terra Cotta's arguments, plaintiff maintains that the risk of loss was on him, but he has cited no authority in that regard.

We do not find the *Geist* opinion to be particularly helpful in deciding whether the vendor or the purchaser bore the risk of loss in this case. To be sure in *Geist* the court held that the risk of loss by fire was on the vendor, but in that case the contract expressly provided that "if prior to closing, improvements on said premises shall be destroyed, materially damaged by fire or other casualty, this contract at the option of Purchaser shall become null and void." (*Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 562.) The real estate sales contract in the instant case did not expressly allocate the risk of loss.

■ Although neither party has cited it, this case appears to be controlled by the Uniform Vendor and Purchaser Risk Act (the Act) enacted in Illinois in 1963. In pertinent part, section 1 of the Act provides:

> "Any contract hereafter made for the purchase and sale of real property in this State shall be interpreted as including an agreement that the parties shall have the following rights and duties, unless the contract expressly provides otherwise:
> * * *
> (b) If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid * * *." (Ill. Rev. Stat. 1983, ch. 29, par. 8.1.)

In the instant case the purchaser had the right of possession of the land. He had been exercising that right by removing the trees thereon. Because the contract did not "expressly" allocate risk of loss in case of

fire on the vendor, under the statute quoted above the risk of loss was on the purchaser, or plaintiff here.

As noted above, there was a provision of the contract concerning fire insurance. Although this provision did not "expressly" allocate risk of loss, it tends to support the conclusion that the risk was on the purchaser. It required the purchaser to maintain fire insurance on all the buildings on the land in the seller's name in an amount equal to the unpaid balance of the purchase price. The insurance policy was to require all payments for loss to be applied on the purchase price. This provision implies that the sale would be consummated without an abatement of the purchase price in the event of fire.

■ Terra Cotta maintains that its position that risk of loss was on the vendor is supported by the paragraph of the agreement which provided that "no right, title or interest, legal or equitable, in the premises, or any part thereof, shall vest in Purchaser until the delivery of the deed aforesaid by Seller, or until the full payment of the purchase price at the times and in the manner herein provided." This paragraph does not expressly allocate risk of loss by fire. It concerns the timing of the passage of title from the vendor to the purchaser. Under section 1 of the Act, the risk is on the purchaser "when *either* the legal title *or* the possession of the subject matter of the contract has been transferred" (emphasis added) unless the contract "expressly" provides otherwise. (Ill. Rev. Stat. 1983, ch. 29, par. 8.1.) Here, because the contract did not expressly allocate risk of loss by fire, and because possession of the property had been transferred to the purchaser, the risk of loss had also shifted to him and was not dependent on the question of title.

■ The doctrine of standing requires that a party seeking relief from the court allege some injury in fact to a substantive, legally protected interest belonging to him. (*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 371 N.E.2d 881.) The person seeking to invoke the jurisdiction of the court must have some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 371 N.E.2d 881.) Here, because the risk of loss in case of fire was on plaintiff, the loss was his, and he clearly has standing to bring this action.

Terra Cotta argues that even if plaintiff has standing, his claim is barred by the release Borst gave Terra Cotta. This contention is without merit.

■ A release is a contract wherein a party abandons a claim to the person against whom the claim exists. (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456.) In the construction of contracts where no ambiguity is presented, the meaning of the agree-

ment and the intention of the parties must be ascertained from the words employed therein. *Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456.

■ Initially, we note that Terra Cotta has offered no theory for the proposition that Borst had authority to enter into a release contract on plaintiff's behalf. Even if Borst had had such authority, however, he did not exercise it. The release is unambiguous and by its terms binds only Borst, his wife, and "their heirs, executors and administrators." Plaintiff does not fall into one of those categories and is not, therefore, bound by the release.

■ In support of its argument that the release bars plaintiff from bringing this action, Terra Cotta has cited *Cuneo v. City of Chicago* (1948), 400 Ill. 545, 81 N.E.2d 451, and *Porter v. Ford Motor Co.* (1981), 103 Ill. App. 3d 848, 431 N.E.2d 1261, *aff'd* (1983), 96 Ill. 2d 190, 449 N.E.2d 827. Neither of these cases has anything to do with this issue. In *Cuneo* the question concerned the extent of damages covered by a release signed by a landowner, not whether it bound purchasers of the property. In *Porter* the issue was not who was bound by a release but who was released, and it involved the common law rule that the release of one joint tortfeasor releases all. In the instant case, the release Borst gave Terra Cotta did not bind plaintiff. The summary judgment entered in favor of Terra Cotta was improper.

■ Both plaintiff and Terra Cotta have presented arguments on the issue of whether plaintiff properly pleaded his damages. The dispute is whether the damages should be the diminution in the value of the land as a result of the fire, or the value the trees would have had after severance from the realty if they had not been burned. This issue was not the basis for the trial court's entry of summary judgment in favor of Terra Cotta. A reviewing court will not consider questions or contentions which are not essential to the determination of the case before it. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 445 N.E.2d 901.) On remand, the issue of damages may never come up. Plaintiff may fail to prove liability. Accordingly, we will not consider the question of damages.

For the foregoing reasons, the order of the circuit court of McHenry County which granted summary judgment in favor of Terra Cotta is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

HOPF and REINHARD, JJ., concur.