VILLAGE OF FOX RIVER GROVE,
ILLINOIS, Plaintiff,

v.

GRAYHILL, INC., Defendant,
Third–Party Plaintiff,

v.

ALUMINUM COIL ANODIZING CORPO-
RATION, Marvin Frisch, William
Hauck, and Grove Plating Company,
Third–Party Defendants.

No. 92 C 20075.

United States District Court,
N.D. Illinois, W.D.

Oct. 23, 1992.

Peter M. Rosenthal, Rosenthal, Murphey, Coblentz & Janega, Chicago, Ill., for plaintiff.

Mark P. Cohen, Schoenberg, Fisher & Newman, Charles F. Marino, Chicago, Ill.,

Michael C. Poper, Michael C. Poper, P.C., Crystal Lake, Ill., Bertram Allen Stone, Stone, Pogrund, Korey, & Spagat, Chicago, Ill., for defendants.

## ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiff, the Village of Fox River Grove, in McHenry and Lake Counties, Illinois (the Village), filed a three-count complaint against defendant, Grayhill, Inc. (Grayhill). Count I of the complaint is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* Count II is based on this court's supplemental jurisdiction, 28 U.S.C. § 1367(a) and alleges that Grayhill operated a public and private nuisance. Count III, also supplemental, is brought pursuant to section 6b of the Illinois Water Well Construction Code, Ill.Rev. Stat. 111½, ¶ 116.116b.

Grayhill, in turn, has filed a five-count third-party complaint against third-party defendants Aluminum Coil Anodizing Corp. (ACA), Marvin Frisch, William Hauck and Grove Plating Company. Count I is against ACA for contribution under § 113(f) of CERCLA, 42 U.S.C. § 9613(f). Count II, also against ACA, is an action for contribution for creation of a nuisance brought pursuant to the Illinois Contribution Among Joint Tortfeasors Act (Illinois Contribution Act), Ill.Rev.Stat. ch. 70, ¶ 301 *et seq.* The remaining counts are not pertinent to the matter before the court and will not be discussed. Further, third-party defendants Frisch and Hauck have also filed a cross-complaint against ACA for contribution under § 113(f) of CERCLA, 42 U.S.C. § 9613(f).

ACA has filed this motion for summary judgment,[1] contending that a release, executed between it and the Village in 1974, bars recovery by Grayhill, Frisch and Hauck for contribution under CERCLA and the Illinois Contribution Act. ACA alternatively argues that under 42 U.S.C. § 9613(f)(2), parties who settle with the "United States" or any "State" are free from claims for contribution, and that the potential liability of the other parties is reduced by the amount of the settlement.

### FACTS

The facts are essentially undisputed. Plaintiff is an Illinois municipal corporation located in McHenry County and Lake County, Illinois. Grayhill is a Delaware corporation that owns property located at 212 Northwest Highway, Fox River Grove, Illinois (Grayhill property). ACA is an Illinois corporation with its principal place of business in Streamwood, Illinois. Frisch and Hauck are individuals who are residents of the State of Illinois.

ACA is and has been engaged in the business of anodizing aluminum since approximately 1960. On or about October 5, 1962, ACA entered into a lease for the Grayhill property with the then owners, Lois and Clara Cernocky. The lease commenced on January 1, 1963 and terminated on December 31, 1972.

The Grayhill property was sold to Frisch and Hauck via Trust 185 at First National Bank and Trust Company of Barrington on or about November 1, 1965. The property was purchased subject to the lease.

Between November 1968 and November 1974, the Village and ACA engaged in several lawsuits in both federal and state court in connection with ACA's activities on the property. Three ordinance violations were filed against ACA in the 19th Judicial Circuit Court in McHenry County, Illinois, alleging that ACA was violating the Village's sewer ordinance that prohibited the discharge of waste water with a pH of less than 5.5 or in excess of 9.0. An ordinance violation was filed against Ronald L. Rusch, president of ACA, in his individual

---

1. Actually, ACA filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, central to the motion was the applicability of a release allegedly executed between ACA and plaintiff in 1974. Because the release, affidavits and exhibits submitted by the parties constitute matter outside the pleadings, this court converted the motion to dismiss into a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b).

capacity. The Village also filed a case in circuit court alleging that ACA's activities constituted a public nuisance.

Judgment was entered for $6,250 in favor of the Village and against ACA in September, 1972, in the circuit court. ACA appealed to the Illinois Appellate Court, Second District.

The Village issued a water bill to ACA for the period from September 1, 1971 to November 30, 1971 in connection with the Grayhill property for $3,502. A second water bill was issued in the amount of $11,104 for the same period. ACA refused to pay the increased amount of the second water bill and the Village turned off the water supply to the Grayhill property. In response, ACA filed a lawsuit against the Village in the United States District Court, seeking damages for interruption of its operations, a mandatory injunction requiring the Village to turn the water supply to the Grayhill property back on, attorneys' fees and costs based on the Village's violation of the Economic Stabilization Act of 1970. The Village counterclaimed for the amount of the increased water bill. In July 1974, a judgment was entered in favor of ACA and against the Village in the amount of $3,208 plus costs and attorneys' fees, and a judgment was entered in favor of the Village and against ACA for $8,059 in the United States District Court, Northern District of Illinois (No. 72 C 382). Both ACA and the Village filed appeals with the Seventh Circuit Court of Appeals.

In December 1972, ACA ceased conducting business at the Grayhill property and vacated the premises. Frisch and Hauck sold the Grayhill property to Grayhill sometime after December, 1972.

The Village and ACA agreed to settle all of the previously filed or currently pending litigation. The parties agreed that ACA would pay the Village $7,500, all existing judgments against ACA or the Village would be vacated and set aside, all pending litigation would be dismissed with prejudice and each party would execute and deliver a general release to the other party.

Pursuant to the settlement, ACA executed and delivered a general release dated November 4, 1974, in favor of the Village and paid the sum of $7,500. The Village executed and delivered a general release dated November 13, 1974, in favor of ACA and Ronald L. Rusch and adopted a corporate resolution authorizing the release. All of the pending litigation was then dismissed.

In or about April 1983, the sewer system on the Grayhill property ruptured. Subsequently, the Village filed this suit. While the bases for the previous suits were the improper pH levels in the discharged water, the basis for the present suit is the release of trichloroethylene (TCE). CERCLA provides a remedy for such a release and did not become effective until December 11, 1980.

## DISCUSSION

In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). Summary judgment is appropriate where the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509; *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Miller v. ICX*, 358 F.Supp. 1378, 1380 (N.D.Ill.1972). A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. However, a mere "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). The non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

ACA first contends that in addition to the defenses outlined in § 107(b) of CERCLA,[2] equitable defenses may be asserted in connection with the enforcement or interpretation of the statute. Accordingly, ACA contends that it may assert the general release as a defense.

■ Courts differ on whether equitable defenses are available under Section 107. *See* 4 WILLIAM H. RODGERS, JR., ENVIRONMENTAL LAW: HAZARDOUS WASTES AND SUBSTANCES, § 8.13 at 693 (1992). However, as the district court stated in *U.S. v. Hardage,* 116 F.R.D. 460, 464–65 (W.D.Okla.1987),

> [T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences or doubtful construction.'

*Hardage,* 116 F.R.D. at 465 (quoting *Wienberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (refusing to strike defendant's equitable defenses)).

Similarly, other courts have allowed defendants to assert equitable defenses to contribution actions. *See Violet v. Picillo,* 648 F.Supp. 1283, 1294–95 (D.R.I.1986) (because the plaintiff in a reimbursement action seeks equitable remedy of restitution for money spent on cleanup, defendant is entitled to assert equitable defenses), *overruled in part by, United States v. Davis,* 794 F.Supp. 67 (D.R.I.1992); *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1056 n. 9 (D.Ariz.1984), *aff'd* 804 F.2d 1454 (9th Cir.1986) (if plaintiff's suggestion

that 107(b) remedies are exclusive were accepted, a defendant would be liable even if he had already paid in a prior lawsuit since *res judicata,* payment or accord and satisfaction, are not listed as defenses).

■ This court also recognizes that 42 U.S.C. § 9613(f)(1) authorizes a court to use such equitable factors as it deems appropriate when allocating response costs among liable parties. "Although the only defenses to liability remain those set forth in Section 107(b), courts are to resolve [contribution] claims on a case-by-case basis, taking into account relevant equitable considerations." H.R.Rep. No. 253(I), 99th Cong., 2nd Sess., at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862. Therefore, equitable defenses may be asserted against private plaintiffs. *See Davis,* 794 F.Supp. at 71.

Grayhill contends that § 107(e)(1) of CERCLA, 42 U.S.C. § 9607(e)(1), explicitly provides that parties may not contractually relieve themselves from CERCLA liability.[3] In support of this argument, Grayhill cites *CPC Int'l, Inc. v. Aerojet–General Corp.,* 759 F.Supp. 1269 (W.D.Mich.1991).

In *CPC Int'l,* the court, in holding that a cross-claim and other claims for contribution were not barred by a stipulation and consent order previously entered into by the parties, followed *AM Int'l Inc. v. International Forging Equip.,* 743 F.Supp. 525 (N.D.Ohio 1990), and held as follows:

> [D]ecisions that interpret section 107(e)(1) as expressly permitting the allotment of CERCLA liability by contract "render[ ] nugatory the first sentence." In spare form, the first sentence of section 107(e)(1) states that "[n]o indemnification, hold harmless, or similar agreement ... shall ... transfer ... liability imposed under" CERCLA. This bar against the use of releases for CERCLA

**2.** These are (a) Act of God, (b) Act of War, (c) Acts of Third Parties, or (4) any combination of the foregoing. *See* 42 U.S.C. § 9607(b).

**3.** Section 107(e)(1) of CERCLA, 42 U.S.C. § 9607(e)(1) provides as follows:

(1) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

liability can be reconciled with the second sentence of section 107(e)(1) by reading the latter as giving "effect to contracts binding parties otherwise not liable, to indemnify or insure liable parties."

· · ·

... I am satisfied that *AM International* correctly reads section 107(e)(1) as a general statutory rule forbidding the application of releases to bar CERCLA liability. This outcome is consistent with the statute's broad policies of encouraging cleanups and placing the burden of their costs on those responsible for hazardous waste problems.

· · ·

"Congress intended subsection 107(e)(1) to prevent the parties from contractually relieving themselves of liability under the act, whether that liability is enforced by action of the government or in a suit by a person who performed the clean-up and sues others for contribution under the act. In addition, by the second sentence, Congress intended to permit any person to contract with others not already liable under the act to provide additional liability by way of insurance or indemnity."

*CPC Int'l*, 759 F.Supp. at 1282–83 (citations omitted) (quoting *AM Int'l*, 743 F.Supp. at 529–30).

This reading of the section also comports with CERCLA policy. While the statute's primary policy is the encouragement of clean-up initiative on the part of responsible parties, a secondary policy is the equitable apportionment of costs in the aftermath. A secondary policy that permitted defenses to contribution of this kind would undercut the primary policy of encouraging clean-up initiative. Parties would be less likely to take the initiative if a mutual release were in effect among them, since the release would confine the costs to any party which acted.

*AM Int'l*, 743 F.Supp. at 529.

ACA argues that § 107(e)(1) of CERCLA is inapplicable to releases. ACA contends that § 107(e)(1) only applies to agreements which "transfer" liability from one party to another, with the exception of insurance agreements. Releases, ACA argues, are not expressly included in § 107(e)(1) and should not be included by analogy because they do not "transfer" liability in the sense contemplated by § 107(e)(1), but, rather, act to "discharge" liability.

ACA offers no support for its contention, and, indeed, this court can find no case where this precise issue has been addressed. Several cases interpreting § 107(e)(1), however, have discussed the applicability of § 107(e)(1) to agreements similar in language and scope to the release at bar. *See Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986) (general settlement and release); *Purolator Prods. Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124 (W.D.N.Y.1991) (settlement agreement and purchase agreement); *FMC Corp. v. N. Pump Co.*, 668 F.Supp. 1285 (D.Minn. 1987) (release), *appeal dismissed*, 871 F.2d 1091 (8th Cir.1988). Each of these cases, however, assumed the "release" in question was included within the terms listed under § 107(e)(1). This court, however, need not decide the issue. Even if a release *is* an agreement contemplated by § 107(e)(1), the release nonetheless serves as a bar to a CERCLA action in this case, as will be discussed below.

As Grayhill correctly points out, *CPC Int'l* and *AM Int'l* hold that contractual agreements between private parties may not be asserted as defenses in contribution actions under CERCLA. *CPC Int'l*, 759 F.Supp. at 1283; *AM Int'l*, 743 F.Supp. at 530. However, there is a significant line of cases providing that contractual agreements may operate to bar CERCLA claims. *See Niecko v. EMRO Mktg. Co.*, 973 F.2d 1296, 1300 (6th Cir.1992) (interpreting § 107 under CERCLA as allowing the transfer of liability between third parties); *Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 691 (9th Cir. 1992) ("This court has held that enforcement of indemnification clauses does not frustrate public policy as expressed in CERCLA"); *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986); *Armotek Indus. v. Freedman*, 790 F.Supp. 383, 386–87 (D.Conn.1992); *Purolator Prods. Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124, 129 (W.D.N.Y.1991); *Rodenbeck v. Marathon Petroleum Co.*, 742

F.Supp. 1448, 1456 (N.D.Ind.1990); *Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1000 (D.N.J.1988); *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285, 1289 (D.Minn.1987), *appeal dismissed*, 871 F.2d 1091 (8th Cir.1988).

CERCLA does not abrogate the parties' contractual rights. *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000. By its own terms, CERCLA expressly preserves the right of private parties to contractually transfer to or release another from the financial responsibility arising out of CERCLA liability. *Armotek*, 790 F.Supp. at 386–87; *Purolator*, 772 F.Supp. at 129; *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000. "The first sentence [of § 107(e)] provides that all parties involved are to be jointly and severally liable to the claimant under the statute. *Niecko*, 973 F.2d at 1300. Where the claimant is the government, liability may not be transferred. *Niecko*, 973 F.2d at 1300; *Armotek*, 790 F.Supp. at 387; *Purolator*, 772 F.Supp. at 129; *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000. Therefore, in terms of financial liability, the parties may allocate the costs of the cleanup between themselves. *Niecko*, 973 F.2d at 1300; *Armotek*, 790 F.Supp. at 387; *Purolator*, 772 F.Supp. at 129; *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000.

Contractual arrangements apportioning CERCLA liability between private "responsible parties" are essentially tangential to the enforcement of CERCLA's liability provisions. *Mardan*, 804 F.2d at 1459. Such agreements cannot alter or excuse the underlying liability, but can only change who ultimately pays that liability. *Mardan*, 804 F.2d at 1459; *Armotek*, 790 F.Supp. at 387; *Purolator*, 772 F.Supp. at 129; *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000. Moreover, regardless of how or under what law these agreements are interpreted, the result cannot prejudice the right of the government to recover cleanup or closure costs from any responsible party. *Mardan*, 804 F.2d at 1459; *Armotek*, 790 F.Supp. at 387,

*Purolator*, 772 F.Supp. at 129; *Rodenbeck*, 742 F.Supp. at 1456; *Southland*, 696 F.Supp. at 1000.

The question next becomes whether the Village would be considered the "government" as that term is used in the above cases, or a private party. The term "government" is not defined anywhere in CERCLA. *See* 42 U.S.C. § 9601. However, the terms "United States" and "State" are defined to "include the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction." 42 U.S.C. § 9601(27). The term "person" is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of State, or any interstate body." 42 U.S.C. § 9601(21). When the United States or any State performs a removal or remedial action, a liable party must pay all costs associated with such an action which are not inconsistent with the national contingency plan. 42 U.S.C. § 9607(a)(4)(A). However, if any "person" performs such an action, liable parties are responsible for necessary costs which are consistent with the national contingency plan. 42 U.S.C. § 9607(a)(4)(B). The standard required for reimbursement of response costs for the United States or any State is governed by a less demanding burden of proof than that for "persons." *See generally Bedford v. Raytheon*, 755 F.Supp. 469 (D.Mass.1991). This court holds that the term "government" as that term is used in cases which hold that a release is not valid against the government refers to the governmental bodies included in the definition of "United States" and "State."

Courts differ on whether a municipality, such as the Village, is considered a "State." *Compare Bedford*, 755 F.Supp. at 475 *with Mayor and Bd. of Aldermen v. Drew Chemical Corp.*, 621 F.Supp. 663

(D.N.J.1985); *City of New York v. Exxon Corp.,* 633 F.Supp. 609 (S.D.N.Y.1986). In construing CERCLA, the primary focus of attention must be the statute itself. *Bedford,* 755 F.Supp. at 474 (quoting *Reardon v. United States,* 922 F.2d 28, 33 (1st Cir. 1990).

> The language and structure of CERCLA make clear that a municipality is not a "State" as defined in the statute. Although references to the overall philosophy of CERCLA and its "legislative history" can be tailored to suggest that a different definition would be appropriate, such tailoring is not the proper way to approach construction of the statute. In light of the conclusion that the words and structure of the statute make evident a congressional intent to treat states differently in important ways from their municipalities or political subdivisions, the language of the statute must be implemented.

*Bedford,* 755 F.Supp. at 475. The statute specifically includes municipalities as "persons." 42 U.S.C. § 9601(21). For the reasons set forth in *Bedford,* 755 F.Supp. 469, this court finds that the Village is not a "State," and, therefore, not the "government" referred to in *Niecko* and its predecessors. Nevertheless, having determined that releases may apply, generally, to private parties in CERCLA cases, this court must now determine whether the release at bar is valid.

Federal law governs the validity of releases of federal causes of action. *Lumpkin v. Envirodyne Ind., Inc.,* 933 F.2d 449, 457 (7th Cir.1991); *Mardan,* 804 F.2d at 1457. State law, however, should be incorporated to provide the general content of that federal law, *Mardan,* 804 F.2d at 1460; *see also Lumpkin,* 933 F.2d at 458, so long as the governing state law does not in any way appear to be aberrant or hostile to federal interests. *Lumpkin,* 933 F.2d at 458 n. 7; *Mardan,* 804 F.2d at 1460; *see also FMC,* 668 F.Supp. at 1291 (applying Minnesota law); *Purolator,* 772 F.Supp. at 131, n. 3 (noting that New York, Delaware and federal law would require the same conclusion).

Turning to state law, this court must examine the law of releases in Illinois. Under Illinois law, a release is a contract by which a party relinquishes a claim to a party against whom the claim exists, *Carona v. Illinois Cent. Gulf R. Co.,* 203 Ill.App.3d 947, 148 Ill.Dec. 933, 936, 561 N.E.2d 239, 242 (5th Dist.1990); *Central Prod. Credit Ass'n v. Hans,* 189 Ill.App.3d 889, 137 Ill.Dec. 302, 309, 545 N.E.2d 1063, 1070 (2d Dist.1989); *Gillilan v. Trustees for Cent. States,* 183 Ill.App.3d 306, 131 Ill.Dec. 950, 955, 539 N.E.2d 303, 308 (2d Dist.1989); *Whitehead v. Fleet Towing Co.,* 110 Ill.App.3d 759, 66 Ill.Dec. 449, 452, 442 N.E.2d 1362, 1365 (5th Dist. 1982), and is governed by contract law. *Farm Credit Bank of St. Louis v. Whitlock,* 144 Ill.2d 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991); *Carona,* 203 Ill.App.3d at 950, 148 Ill.Dec. at 936, 561 N.E.2d at 242; *Central Prod.,* 189 Ill. App.3d at 898, 137 Ill.Dec. at 309, 545 N.E.2d at 1070. The intention of the parties controls the scope and effect of the release and such intent is discerned from the language used and the circumstances of the transaction. *Carona,* 203 Ill.App.3d at 950, 148 Ill.Dec. at 936, 561 N.E.2d at 242; *Gillilan,* 183 Ill.App.3d at 307, 131 Ill.Dec. at 955, 539 N.E.2d at 308; *Whitehead,* 110 Ill.App.3d at 762, 66 Ill.Dec. at 452, 442 N.E.2d at 1365. Where a written release is clear and explicit, the court should determine the meaning and intention of the parties from the face of the document and enforce the contract as written. *Central Prod.,* 189 Ill.App.3d at 900, 137 Ill.Dec. at 309–10, 545 N.E.2d at 1070–71; *Gillilan,* 183 Ill.App.3d at 307, 131 Ill.Dec. at 955, 539 N.E.2d at 308; *see also Farm Credit,* 144 Ill.2d at 446, 163 Ill.Dec. at 513, 581 N.E.2d at 667 (intention of the parties must be determined from the instrument itself). Construction of the instrument where no ambiguity exists is a matter of law. *Farm Credit,* 144 Ill.2d at 446, 163 Ill.Dec. at 513, 581 N.E.2d at 667.

A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions; it is not ambiguous if the court can determine its meaning without any guide other than a knowl-

edge of the simple facts on which, from the nature of language in general, its meaning depends. Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction.

*Murphy v. S–M Delaware, Inc.*, 95 Ill. App.3d 562, 565, 51 Ill.Dec. 42, 45, 420 N.E.2d 456, 459 (1st Dist.1981) (citations omitted) (quoting *Public Relations Board, Inc. v. United Van Lines, Inc.*, 57 Ill. App.3d 832, 833–34, 15 Ill.Dec. 381, 373 N.E.2d 727 (1st Dist.1978)).

■■■ The release executed between the Village and ACA in this case, provides that the Village, in consideration of the sum of $7,500 and other good and valuable consideration, including the vacating and setting aside of a judgment in the amount of $3,208.50 entered against the Village,

HAS REMISED, RELEASED AND FOREVER DISCHARGED AND, BY THESE PRESENTS, DOES, FOR ITSELF AND ITS SUCCESSORS, REMISE, RELEASE AND FOREVER DISCHARGE [ACA], its president, Ronald L. Rusch, and their successors, heirs, executors, and administrators of and from all manner of actions, causes, and causes of action, suits, debts, sums of money ... controversies ... damages ... judgments ... claims and demands, whatsoever, in law or in equity, and particularly, without limiting the generality of the foregoing, the following matters:

1. Judgment entered on July 10, 1974 in Case No. 72 C 382 pending in the United States District Court for the Northern District of Illinois, Eastern Division, against [ACA] and in favor of [the Village] in the sum of $8059.59,

2. Decree and Judgment entered on September 26, 1972 in Case No. 71–133 pending in the Circuit Court for the 19th Judicial Circuit, McHenry County, Illinois against [ACA] and in favor of [the Village] in the sum of $6,250.00,

3. All pending ordinance violation cases filed by [the Village] against [ACA] in the Circuit Court for the 19th Judicial Circuit, McHenry County, Illinois, including Case Nos. 69–569, 71–125 and 73–563,

4. All pending ordinance violation cases filed by [the Village] against Ronald L. Rusch in the Circuit Court for the 19th Judicial Circuit, McHenry County, Illinois, including Case No. 73–562,

which the Village ... now has against [ACA] and Ronald L. Rusch, or ever had, *or which the Village ... or its successors, hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing, whatsoever,* on or at any time prior to the date of these Presents. (emphasis added).

The language of the release clearly indicates that the parties intended to settle a wide variety of disputes relating to ACA's operation of the property. The Village, recognizing that continuation of the litigation with ACA would involve a large expenditure for court costs, attorney's fees and printing costs, and that the termination of all pending litigation was in its best interests, passed a resolution authorizing the settlement with ACA. The Village was well aware of possible contamination of water discharged by ACA into its sewers. This is plainly evident by virtue of the ordinance violation cases filed against ACA by the Village in the late 1960's and early 1970's. ACA had not operated the property since 1972 and the agreement was signed in 1974. The comprehensive nature of the release is indicative of ACA's intent to release itself from any further such claims. The parties knew and understood that all potential causes of action were being released. Therefore, this court holds that the Village has validly released ACA from liability under CERCLA.

Grayhill contends that when an instrument contains recitals of, or other reference to, specific claims and also words of general release, the words of general release are limited to the particular claim or claims to which reference is made. *See e.g. Whitehead*, 110 Ill.App.3d at 762, 66 Ill. Dec. at 452, 442 N.E.2d at 1365. However, upon closer examination, it is clear that the parties intended that the release not be limited to the particular claims articulated in the body of the release. The release

specifically states, just prior to listing various pending claims the Village had against ACA, that it was listing those claims without limiting the generality of the release.

 Grayhill further contends that a general release should not be read to include claims which were not then in the minds of the parties. A general release is inapplicable to unknown claims, *Farm Credit*, 144 Ill.2d at 446, 163 Ill.Dec. at 513, 581 N.E.2d at 667. A court of equity will not allow the releasee to take advantage of the general words of a release to defeat the collection of a demand not then in the minds of the parties. *Murphy*, 95 Ill. App.3d at 566, 51 Ill.Dec. at 46, 420 N.E.2d at 460. However, as noted above, contamination and potential cleanup costs were certainly not unknown to the Village. *See Murphy*, 95 Ill.App.3d at 566, 51 Ill.Dec. at 46, 420 N.E.2d at 460. In fact, each of the pending ordinance violations against ACA involved some sort of environmental claim. The fact that CERCLA had not yet been enacted is of no consequence. The Village was well aware of the possible contamination of the site when it settled its claims with ACA.[4]

Grayhill's reliance on *Continental Concrete Pipe Corp. v. K & K Sand and Gravel, Inc.*, No. 88 C 9375, 1990 WL 7095 (N.D.Ill. January 22, 1990), is unpersuasive. The language which the court had found to be ambiguous in *Continental* was essentially the same as that in *Murphy*, which did not find it to be ambiguous. *See Murphy*, 95 Ill.App.3d at 565, 51 Ill.Dec. at 45, 420 N.E.2d at 459. This court, too, finds the release to be unambiguous.

Further, *Continental Concrete* is factually distinct from the case at bar. In *Continental Concrete*, the plaintiff sued the defendant over the condition of certain machinery and equipment that was sold with certain property. The parties settled the lawsuit and executed a written settlement agreement which included specific recitals of the dispute between the parties as well as general language purporting to release the parties from any other claims involving the property. Thus, the initial dispute involved equipment and machinery and the defendant asserted the release as a bar to an unrelated claim of environmental liability.

In the case at bar, the prior lawsuit and settlement between ACA and the Village involved contaminated sewer discharge. The present case also involves contamination (possibly due to a rupture in the sewer system) and, Grayhill alleges, is apparently related to ACA's earlier activities. ACA and the Village settled all claims relating to its activities on the property.

 Grayhill also argues that Count II of the counterclaim should not be barred because the Illinois Contribution Act applies to "all causes of action arising on or after March 1, 1978." This argument is based on Grayhill's assertion in its memorandum that ACA's disposal of acids and other caustic chemicals on the Grayhill property resulted in the rupture of the sewer system sometime in 1983. It was this "occurrence," Grayhill argues, that gave rise to the contamination of the property. However, in its statement of additional material facts, Grayhill merely states that the sewer ruptured in April 1983. This constitutes merely a scintilla of evi-

4. This court is not alone in holding that releases may effectively bar CERCLA claims even though they were executed prior to the enactment of CERCLA. In *FMC*, the district court found that the language of the release unambiguously stated that FMC released the defendant from future arising causes of action, and upheld its validity. 668 F.Supp. at 1292 (applying Minnesota law). Likewise, the court in *Purolator*, construed the language in a release which was entered into prior to the enactment of CERCLA as applying to CERCLA liability. 772 F.Supp. at 132. Although parties could not be expected to have foreseen CERCLA before it was enacted, an agreement which is broad enough to encompass any and all claims, or which clearly refers to environmental liability, covers CERCLA liability. *Purolator*, 772 F.Supp. at 132. (noting that New York, Delaware and Federal law would all require the same conclusion). *But see, Continental Concrete Pipe Corp. v. K & K Sand and Gravel, Inc.*, No. 88 C 9375, 1990 WL 7095, at * 3 (N.D.Ill. Jan. 22, 1990) ("Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties.").

dence and is insufficient to create a factual dispute. Grayhill does not allege any facts which would indicate the cause of the rupture or occurrence. Grayhill has not pled any facts which link the rupture to ACA. The mere fact that the sewer ruptured, without more, is not enough to support Grayhill's assertion that ACA's disposal of contaminants caused the sewer to rupture. Therefore, based on the facts presently before it, this court cannot find that Grayhill's cause of action against ACA occurred subsequent to the effective date of the Contribution Act.

For the same reasons set forth above, the motion for summary judgment in favor of ACA is also granted as to Frisch and Hauck.

## CONCLUSION

For the foregoing reasons, ACA's motion for summary judgment on the third party complaint for contribution by Grayhill is granted. ACA's motion for summary judgment on the cross complaint for contribution of Frisch and Hauck is also granted.